In the Matter of the Application of TRUSTEES UNDER THE WILL AND OF THE ESTATE OF JAMES CAMPBELL, DECEASED, to register and confirm title to real property situate at Malaekahana, Koolauloa, Oahu, State of Hawaii

NO. 8807

(APPLICATION NO. 1095)

APRIL 20, 1983

LUM, ACTING C.J., NAKAMURA, PADGETT, AND HAYASHI, JJ., AND CIRCUIT JUDGE TSUKIYAMA ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY NAKAMURA, J.

The City and County of Honolulu (the City) challenges the authority of the Land Court of the State of Hawaii (the Land Court) to issue an order of consolidation and subdivision of real property where prior approval of the subdivision plan and map had not been obtained from the Director of the City's Department of Land Utilization. Concluding that in the particular circumstances involved the Land Court exceeded its statutory powers, we vacate the order.

I.

The Land Court's consolidation of nine registered "roadway lots" situated between twenty-two residential lots and Kamehameha Highway in the City and County of Honolulu and resubdivision of the consolidated lot into twenty-two lots are questioned by the City. Prior to the foregoing court order, each owner of a residential lot possessed an undivided 1/22nd interest in the roadway lots. The residential lot owners, how-

ever, deemed it advisable to acquire individual titles to those portions of the roadway lots immediately abutting their property and therefore agreed to a plan whereby a partition of the roadway lots would be effected. In accord therewith the residential lot owners conveyed their undivided interests in the roadway lots to American Trust Co. of Hawaii, Inc. (American Trust or the trust company). It was understood that upon approval of the consolidation and resubdivision of the nine roadway lots, the trust company would convey to each residential lot owner for outright possession the newly subdivided lot adjacent to his property.

A map charting the agreed consolidation and subdivision was submitted to the Department of Land Utilization for review as required by Chapter 22 of the Revised Ordinances of Honolulu 1978 and the Subdivision Rules and Regulations of the City and County of Honolulu. The Department upon reviewing the document indicated it would not approve the plan of partition unless it was to be followed by the consolidations of the subdivided roadway lots and the bordering residential lots. This would have necessitated a survey to determine the seaward boundary of each lot. The City's stance was predicated on a belief that without the subsequent consolidations the proposed subdivision would create some substandard lots—those failing to meet the minimum lot requirements of the Comprehensive Zoning Code.[1] The City felt this would also cause some residential lots to be without direct access to Kamehameha Highway, since the subdivided lots would be situated between these properties and the highway.

---

[1] The City's Comprehensive Zoning Code 1978 § 21-5.33 states the minimum allowable lot area requirements as follows:
(a) Lot Area.
   (1) For one-family detached dwellings, the minimum lot area shall be 5,000 square feet.
   (2) For two-family detached dwellings, the minimum lot area shall be 7,500 square feet.
   (3) For a use other than a dwelling, the minimum lot area shall be 20,000 square feet, excepting lots utilized entirely for utility installations which shall be not less than 3,500 square feet.
   (4) For duplex dwellings, the minimum lot area shall be 3,750 square feet.

Rather than further pursuing this course of action, American Trust then turned to the Land Court in an effort to effectuate the plan, filing a Petition for Consolidation and Subdivision, Cancellation of Easement, Designation of Easement, and Issuance of Order to Show Cause in the Land Court on September 21, 1981. In the accompanying memorandum, American Trust averred that if the subdivided lots were to be consolidated with the adjacent residential lots as urged by the City, a costly survey to delineate the seaward boundary of each newly consolidated lot would be required. As an alternative, American Trust suggested therein that the Land Court approve the proposed subdivision but expressly forbid the conveyance of a newly subdivided lot without a simultaneous conveyance to the same grantee of the adjoining residential lot.

Responding to the Order to Show Cause issued by the Land Court as prayed for by the petitioner, the City filed a memorandum opposing the petition on grounds that the proposed consolidation and subdivision had not been approved by the City's Department of Land Utilization, the plan did not comply with the City's subdivision rules and regulations on minimum lot size and access to a public street, and American Trust had not availed itself of established administrative remedies before seeking relief in the Land Court.

After conducting several hearings, the court on March 31, 1982 issued an order that approved the proposed consolidation and subdivision but also provided the owner of each residential lot would be issued a single certificate of title, which would contain a memorandum stipulating that the residential lot and the newly subdivided adjacent roadway lot "shall be conveyed together and not separately." The proviso, in the court's stated view, obviated the problems raised by the City on lot size and access.

A timely appeal from the Land Court order was perfected by the City pursuant to HRS § 501-63, which provides that "[i]n all cases an appeal to the supreme court shall lie from the final decree of the land court on behalf of any party aggrieved by the decree."

II.

The question presented by the City's appeal is whether the Land Court may approve a petition for the consolidation and subdivision of registered land where the plan or map describing or delineating the proposed actions has not been approved by the county concerned. The resolution of the issue turns on the respective powers of the court and the county with regard to registered land. We initially focus on the court and its authority.

The Land Court is a court of limited jurisdiction created by the legislature for the special purpose of carrying into effect the Torrens title system of land registration. *In re Rosenbledt,* 24 Haw. 298, 308 (1918). Named for Sir Richard Torrens, a nineteenth century reformer of Australian land laws and the originator of the scheme, *Black's Law Dictionary* 1335 (5th ed. 1979), the Torrens title system was initially adopted and implemented in Hawaii in 1903 with the establishment of the Court of Land Registration. S.L.H. 1903, c. 56, § 2. The statutes governing the jurisdiction and powers of the Land Court have since been amended several times and the name of the court itself has been changed; but the basic Torrens title system of land registration has continued virtually unaltered to the present. *See* S.L.H. 1903, c. 56; HRS §§ 501-1 to -221. It remains "[a] system for registration of land under which, upon the landowner's application, the court may, after appropriate proceedings, direct the issuance of a certificate of title." *Black's Law Dictionary, supra.*

The Land Court "derives all of its power from the statutes relating to it, and can exercise no power not found within these statutes." *In re Rosenbledt,* 24 Haw. at 308. Its statutory foundation, HRS § 501-1, provides in relevant part:

A court is established, called the land court, which shall have exclusive original jurisdiction of all applications for the registration of title to land and easements or rights in land held and possessed in fee simple within the State, with power to hear and determine all questions arising upon such applications, and also have jurisdiction over such other questions as may come before it under this chapter, subject to the rights of appeal under this chapter. The

proceedings upon the applications shall be proceedings in rem against the land, and the decrees shall operate directly on the land and vest and establish title thereto.

While the foregoing language vests the court with broad authority relative to land registration, HRS Chapter 501 contains other more explicit provisions governing specific aspects of its function. We therefore move on to the applicable provisions to see whether there is merit in the City's claim that the court exceeded its powers in issuing the order of consolidation and subdivision.

## III.

The procedures to be followed by a landowner seeking approval of a consolidation or subdivision of registered land and by the Land Court in approving the same are set forth in HRS § 501-85, which in pertinent part states:

Any owner proposing to combine two or more parcels of land, or to subdivide any registered land, shall file with the court an application therefor, together with a map or plan showing the proposed combination or subdivision and accurately delineating thereon all boundaries, streets, passage ways, and ·other easements connected therewith. The court, before approving the same, and authorizing the issuance of any new certificate or certificates thereon, shall cause the same to be verified by the department of accounting and general services and be satisfied that the same are accurately represented, and that the applicant has complied with the laws and regulations covering subdivisions in the county concerned, applicable thereto. .

Thus, the statute on its face gives proof that the Land Court should not approve an application for consolidation or subdivision unless it first satisfies itself that the applicant has complied with the City's "laws and regulations covering subdivisions."

The City insists the Land Court transgressed the bounds of HRS § 501-85 in approving American Trust's petition because the evidence adduced at the Land Court hearings demonstrated it had not complied with City charter provisions and ordinances relating to the subdivision of land. Our attention is

directed first to the Revised Charter of Honolulu 1973 (RCH) § 6-1007.2[2] and the Revised Ordinances of Honolulu 1978 (ROH) § 22-3.3(a),[3] which proscribe the subdivision of any land unless the plans for partition have been approved by the Director of the City's Department of Land Utilization (the Director). We are then referred to ROH § 22-3.3(b),[4] which prohibits any person from submitting a map of a subdivision or consolidation to the Land Court unless it has been approved by the Director. Since the plan of partition and the map submitted by American Trust to the Department of Land Utilization and to the Land Court were not approved the City argues the Land Court's lack of power to grant the petition is manifest.

We would have to agree, for the Land Court acted prematurely in granting the petition before American Trust had obtained the approval of the Director on its plan of partition and the map outlining the subdivision. Without such approval, the petition was definitely not ripe for court action. Furthermore, there are established procedures, none of which involve the Land Court, for appealing any other decision rendered by

---

[2] RCH § 6-1007.2 states:

Approval of Subdivisions. After the enactment of the ordinance governing subdivisions or consolidations of land, no land may be subdivided unless the proposed subdivision plans are in conformity with the subdivision ordinance and rules and regulations and have been approved by the director of land utilization.

[3] ROH § 22-3.3(a) states:

No person shall subdivide or consolidate any land unless the plans therefor conform to the provisions of this article and the regulations of the Planning Commission and the Board of Water Supply, and have been duly approved by the Director.

[4] ROH § 22-3.3(b) states:

No person shall submit a map of a subdivision or consolidation of land for recordation or filing in the office of the registrar of conveyances or the assistant registrar of the Land Court unless such map has been given final approval by the Director.

the Director in these matters.. Pursuant to RCH § 6-1009(a),[5] an aggrieved subdivider may appeal from the Director's action to the City's Zoning Board of Appeals; and an adverse decision there enables the subdivider to seek further review in the circuit court pursuant to HRS § 91-14(a).[6]

Consequently, we hold that the Land Court, by statute, may approve a consolidation or subdivision and authorize the issuance of a new certificate of title reflecting such action for property located in the City and County of Honolulu only when the consolidation or subdivision plan and map have received the prior approval of the Director of the Department of Land Utilization of the City and County of Honolulu. In all other instances, the court is without authority to approve such applications.

The Order of Consolidation and Subdivision, Cancellation of Easement, and Designation of Easement is vacated, and the case is remanded to the Land Court with instructions to dismiss the petition filed by American Trust.

*Susan Tamura Sato,* Deputy Corporation Counsel, for appellant.

*Donald E. Scearce (Stanley K. W. Chong* with him on the brief; *Cades, Schutte, Fleming & Wright,* of counsel) for appellee.

---

[5] RCH § 6-1009(a) states:

The zoning board of appeals shall:

Hear and determine appeals from the actions of the director of land utilization in the administration of the zoning and subdivision ordinances and any rules and regulations adopted pursuant thereto. An appeal shall be sustained only if the board finds that the director's action was based on an erroneous finding of a material fact, or that the director had acted in an arbitrary or capricious manner or had manifestly abused his discretion.

[6] HRS § 91-14(a) states:

Any person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter; but nothing in this section shall be deemed to prevent resort to other means of review, redress, relief, or trial de novo, including the right of trial by jury, provided by law.