In the Matter of the Application of the TRUSTEES UNDER THE WILL AND OF THE ESTATE OF SAMUEL M. DAMON, DECEASED, to register and confirm title to land situate at Moanalua, Honolulu, City and County of Honolulu, State of Hawaii

NOS. 8383 AND 9262

(APPLICATION NO. 1074)

OCTOBER 9, 1984

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

In No. 8383, John William Pieper James (James) appeals from the land court order which divests his interest in certain real property. In No. 9262, Robert Leroy Reed (Reed) appeals from the judgment which cancels his interest in the same property as a purchaser under an agreement of sale. Both the order and the judgment are in favor of Robert Frank Converse (Converse), the petitioner in both land court proceedings. On April 25, 1984, the appeals were consolidated by this court as they involve the same basic facts, the same property, and interrelated parties.

The dispositive issues on appeal are:

    1. Whether the land court had jurisdiction to hear and determine the cases in Nos. 8383 and 9262.

    2. Whether the order in No. 8383 should be vacated since the land court made no findings of fact to support its conclusions.

We answer yes to both questions, set aside the order, and remand No. 8383. Such disposition of No. 8383 requires the vacation of the judgment in and remand of No. 9262 also.

## I. FACTS

The somewhat confusing nature of the cases springs from the fact that Converse's claims arose through his dual roles as the seller of the property under an agreement of sale and as an alleged secured lender of money to James.

By Agreement of Sale dated December 7, 1977 (AOS), Converse sold a certain improved residential property in Honolulu (the property) for $80,000 to James and Ted Gerald Kroum (Kroum), as tenants in common. The AOS required a down payment of $5,000 and monthly installment payments of $500, including interest at 8% per annum, and set a maturity date of December 9, 1980. A separate provision declared time "to be of the essence." The property was land court registered under Hawaii Revised Statutes (HRS) chapter 501.

On March 8, 1979, Kroum assigned his AOS interest to Dwain Delbert McDaniel (McDaniel). By assignment dated March 12, 1979, James and McDaniel transferred their interests to James and Reed, as tenants in common. James and Reed subsequently made substantial home improvements on the property.

On or about September 11, 1980, Converse loaned $25,000 to James, which loan was evidenced by a promissory note dated September 15, 1980. It appears that a balance of $75,000 still remained unpaid on the AOS. Converse and James signed a document dated September 15, 1980, and labeled "PURCHASE AGREEMENT OPTION" (PAO), which provided in pertinent part:

    1. In consideration of [James] being loaned $25,000.00 on or about September 11, 1980 by [Converse] together with a $75,000.00 payment due on said property on December 9, 1980

from [James] to [Converse], being waived by [Converse], [James][1] agrees to grant, bargain, deed over, sell, assign and convey unto [Converse] all rights and interests in the [property].

 2. THIS OPTION SHALL BE VALID AND BINDING ON THE PARTIES HEREIN ONLY IF [James] FAILS TO REPAY THE $25,000.00 LOAN TO [Converse] ON OR BEFORE NOVEMBER 1, 1980. If and when [James] repays said $25,000.00 loan to [Converse] on or before November 1, 1980, this PURCHASE OPTION AGREEMENT shall automatically become null and void and of no legal effect.

No. 8383, Petitioner's Exhibit 1 (footnote added).

 James failed to repay the $25,000 loan on or before November 1, 1980. On February 24, 1981, Converse filed a document labeled "EXERCISE OF OPTION" in the Office of the Assistant Registrar of the Land Court as Document No. 1056219. The document stated that Converse was exercising the PAO, which had been filed on October 1, 1980, in the Office of the Assistant Registrar as Document No. 1034187.

 On December 17, 1981, Converse's attorney wrote to Reed stating that all payments under the AOS were due on December 9, 1980, that Reed owed a principal balance of $37,500, and that Reed was in default. On January 8, 1982, Converse filed in the Office of the Assistant Registrar a document labeled "NOTICE OF CANCELLATION OF AGREEMENT OF SALE" as Document No. 1100475.

### A. Proceeding Against James

 On March 9, 1981, Converse filed a petition in the land court alleging the exercise of the PAO and praying for an order directing the Assistant Registrar to note on his certificate of title the transfer of James' interest in the property to Converse.

---

[1] The Purchase Agreement Option (PAO), which was filed in the Office of the Assistant Registrar of the Land Court as Document No. 1034187, provides that "[Converse] agrees to grant . . . unto [Converse]," while the copy of the PAO attached to the Exercise of Option dated January 26, 1981 and filed as Document No. 1056219 provides that "[James] agrees to grant . . . unto [Converse]." From the context, it being clear that James is the "optionor" and Converse is the "optionee," we ignore James' claim of fraudulent alteration of documents.

After hearings were held, on June 2, 1981, the land court entered its order which provided that James' interest in the property "is hereby assigned, set over and transferred" to Converse and that after the filing of the order James "shall no longer have any interest" in the property. James appealed after his motion to amend the order or, in the alternative, for a new trial was denied.

### B. Proceeding Against Reed

On January 27, 1982, Converse filed a petition in the land court seeking an order (1) "terminating and extinguishing" Reed's interest in the AOS and the property, (2) holding that all payments made by Reed may be "held and retained" by Converse "as and for liquidated damages and/or an agreed rental," and (3) directing the Assistant Registrar to note the cancellation of the AOS on his certificate of title. Reed's primary defense was that upon Converse's exercise of the PAO (which the land court had enforced), Converse had waived the $75,000 balance owed by James and Reed as joint and several co-obligors under the AOS and, therefore, Reed owed nothing to Converse.

On December 14, 1982, the land court filed its findings of fact and conclusions of law. It found and concluded that Reed owed Converse a principal balance of $37,500 under the AOS, that he had paid only $500, that time was of the essence under the AOS, and that Reed was in default. On January 14, 1983, a judgment was entered cancelling Reed's interest in the AOS, allowing Converse to retain the $500 paid as liquidated damages, and directing the Assistant Registrar to note the cancellation on Converse's transfer certificate of title. Reed's timely appeal followed.

### II. LAND COURT'S JURISDICTION

Both James and Reed contend that the land court is a court of limited jurisdiction — limited to "proceedings in rem against the land." HRS § 501-1 (1976). They argue, therefore, that the land court is without jurisdiction to hear and determine disputes involving the enforcement of an alleged option, which is, in essence, a mortgage, and a dispute relating to the cancellation of an agreement of sale.

We agree with appellants that the land court is a court of limited jurisdiction for the supreme court has stated that it "derives all of its power from the statutes relating to it, and can exercise no power not found within these statutes." *In re Application of Estate of Campbell,* 66 Haw. 354, 358, 662 P.2d 206, 209 (1983) (quoting *In re Rosenbledt,* 24 Haw. 298, 308 (1918)). However, we do not agree that its jurisdiction is limited to proceedings *in rem* against the land.

The statute which created the land court, HRS § 501-1, provides in pertinent part:

A court is established, called the land court, which shall have exclusive original jurisdiction of all applications for the registration of title to land and easements or rights in land held and possessed in fee simple within the State, *with power to hear* and determine *all questions arising upon such applications, and also have jurisdiction over such other questions as may come before it under this chapter,* subject to the rights of appeal under this chapter. The *proceedings upon the applications shall be proceedings in rem* against the land, and the decrees shall operate directly on the land and vest and establish title thereto. [Emphasis added.]

That section expressly confers jurisdiction on the land court over other questions arising under this chapter. Some of those other questions are found in HRS § 501-196 (1976), which states in pertinent part:

Any registered owner or other person in interest may at any time apply by petition to the court, upon the ground that *registered interests of any description,* whether vested, contingent, expectant, or inchoate *have terminated and ceased;* . . . . The court shall have jurisdiction to hear and determine the petition after notice to all parties in interest and may order . . . the entry or cancellation of a memorandum upon a certificate, or *grant any other relief* upon such terms and conditions, requiring security if necessary, as it may deem proper. [Emphasis added.]

We do not find HRS §§ 501-1 and 501-196 to be incompatible. HRS § 501-1 expressly states that proceedings involving applications to register title shall be proceedings *in rem.* It does not provide that all HRS chapter 501 proceedings shall be proceedings *in rem.* In turn, HRS § 501-196 confers jurisdiction on the land court to hear and determine petitions filed thereunder and general powers to grant relief "as it may deem proper." We deem the land court's

jurisdiction under HRS § 501-196 to be *in personam* as to all interested parties properly served.

*In re Application of Kamau,* 32 Haw. 680 (1933), supports our construction of the statute. In that case, petitioner Central Korean Christian Church sought to cancel and strike from its certificate of title an alleged fraudulent mortgage. The land court held that it was without jurisdiction to hear the controversy and dismissed the petition. The court ruled that the petitioner's remedy to have the mortgage invalidated was in the court of equity; only then could it petition the land court for an order cancelling and striking the mortgage from its certificate of title. The supreme court reversed, holding that under the predecessor to HRS § 501-196, identical to it in pertinent part, the land court did have jurisdiction to determine the issue of fraud. In *Kamau,* the supreme court concluded:

> The mere fact that a court of equity, if applied to, could entertain the petition does not deprive the land court of the power expressly granted to it by the statute to hear applications of a similar nature.

*Id.* at 683.

Here, Converse petitioned the land court to have noted on his certificate of title the transfer of James' interest in the property to him, effected by the exercise of the PAO in No. 8383, and the cancellation of Reed's interest in the AOS and the property in No. 9262. We hold that under HRS § 501-196, the land court had jurisdiction to hear and determine the controversies raised by Converse's petitions.[2]

### III. NO. 8383

James claims that the PAO really evidences a security for the $25,000 loan from Converse with the collateral being his interest in the property, and thus comes within the definition of a mortgage under HRS § 506-1(a) (1976) which provides in pertinent part:

> Every transfer of an interest in real property . . . made as

---

[2] We suggest, although we do not decide, that under HRS § 501-196 the land court may have the discretion of not exercising its jurisdiction over complex cases and of deferring to the circuit court which has concurrent jurisdiction and which may more readily and expeditiously handle those cases. *Cf. Getty Refining & Marketing Co. v. Park Oil, Inc.,* 385 A.2d 147 (Del. Ch. 1978).

security for the performance of another act or subject to defeasance upon the payment of an obligation . . . is to be deemed a mortgage[.]

He argues that the land court therefore erred in merely "rolling over" his interest to Converse without the formality of a standard foreclosure proceeding, including the sale of his interest. HRS § 667-1 (1976); *Powers v. Ellis,* 55 Haw. 414, 520 P.2d 431 (1974).

On the other hand, Converse asserts that the PAO is a standard option agreement. He claims that the document in question grants him an "exclusive option" to purchase the property "under certain terms and conditions," "expires upon the repayment of $25,000 on or before November 1, 1980," and non-payment then automatically should trigger Converse's right to James' interest.

### A. Option

An option to purchase real property is defined:
[A]s a contract by which an owner of real property agrees with another person that the latter shall have the privilege of buying the property at a specified price within a specified time, or within a reasonable time in the future, and *which imposes no obligation to purchase upon the person to whom it is given.*

77 Am. Jur. 2d *Vendor and Purchaser* § 27 at 201 (1975) (emphasis added). In an option agreement, the optionor is bound to perform, if the optionee so desires and fulfills the terms of the contract. 1 S. Williston, *A Treatise on the Law of Contracts* § 61B (3d ed. by W. Jaeger 1957). *See Yee Hop v. Nakuina,* 27 Haw. 286 (1923).

In No. 8383, the exact opposite occurred. James, the optionor, was not bound, but could void the option by repayment. But Converse, the optionee, had already paid the $25,000 and waived the $75,000. Under the PAO, he could not retract his performance and therefore had no choice of whether to perform or not.

Thus, the PAO was not a typical standard option agreement.

### B. Mortgage

Under HRS § 506-1(a), to qualify as a mortgage, the transaction must include a "transfer of an interest in real property." "[W]here an absolute conveyance contains a defeasance clause, the instru-

ment is a mortgage." *Makuakane v. Tanigawa,* 50 Haw. 493, 495, 443 P.2d 153, 155 (1968).

The provision in the PAO which voids the PAO if James repays the $25,000 within the specified time can be construed as a defeasance clause. However, there is no absolute conveyance or transfer of an interest in real property from James to Converse. James merely "agree[d] to grant . . . and convey" all of his rights and interest in the property to Converse *in futuro.* Thus, the PAO was not a typical mortgage either.

## C. The Parties' Intent

It is inconclusive from the mere reading of the PAO whether it is an option agreement or a mortgage. Nor is the title of the PAO decisive since "the form of the instruments cannot control the case if in reality the transaction was a mortgage." *Kawauchi v. Tabata,* 49 Haw. 160, 170-71, 413 P.2d 221, 227, *reh'g denied,* 49 Haw. 255, 413 P.2d 242 (1966). *Cf. Dang v. F & S Land Development Corp.,* 62 Haw. 583, 618 P.2d 276 (1980).

Under such circumstances, the intent of the parties is crucial in determining the nature of the transaction at issue as evidenced by the PAO. The intent of the parties is a question of fact, *Hanagami v. China Airlines, Ltd.,* 67 Haw. 357, 688 P.2d 1139 (1984); *Bishop Trust Co., Ltd. v. Central Union Church of Honolulu,* 3 Haw. App. 624, 656 P.2d 1353 (1983), and on appeal the standard of review of the trial court's findings of fact is the "clearly erroneous" rule. *MPM Hawaiian, Inc. v. Amigos, Inc.,* 63 Haw. 485, 630 P.2d 1075 (1981).

## D. Findings of Fact

It is reasonable to assume that the land court order against James was premised on the court's implicit finding that the PAO was an option agreement rather than a mortgage. However, since the land court failed to make and file any findings of fact and conclusions of law, we are in the dark as to what the court's factual findings were to arrive at its ultimate conclusion regarding the PAO.

Although the Rules of the Land Court (1968) are meager in

scope, Rule 81(b), Hawaii Rules of Civil Procedure (HRCP) (1981), provides that the rules are applicable to proceedings in the land court "except insofar as and to the extent that they are inconsistent with specific statutes of the State or rules of court relating to such proceedings[.]" We do not find Rule 52, HRCP (1981), requiring findings of fact and conclusions of law in non-jury cases, to be inconsistent with HRS chapter 501 or any other statute or with the Rules of the Land Court.[3] We hold that Rule 52, HRCP, is applicable to HRS § 501-196 proceedings.

We have stated that "[w]here the trial court has failed to make appropriate findings, or to find on a material issue, an appellate court will normally vacate the judgment and remand the action for appropriate findings." *Ventura v. Grace*, 3 Haw. App. 371, 376, 650 P.2d 620, 623 (1982). *See also Upchurch v. State*, 51 Haw. 150, 454 P.2d 112 (1969); *Tugaeff v. Tugaeff*, 42 Haw. 455 (1958); *Leslie v. Gonsalves*, 42 Haw. 169 (1957).

We are unable to exercise our power of review without formal findings by the land court or substantial evidence in the record relating to the intent of the parties. Since the land court failed to make any findings in this case, we set aside the land court's order of June 2, 1981, and remand the case for appropriate findings of fact and conclusions of law in accordance with Rule 52, HRCP. Upon remand, the land court should determine whether further hearings are required to enable it to make the proper findings and conclusions. *See Haworth v. State*, 60 Haw. 557, 592 P.2d 820 (1979); *Ventura v. Grace, supra.*

### IV.   NO. 9262

The land court's findings of fact and conclusions of law and new order or judgment in No. 8383 upon remand will affect the disposition of No. 9262. For example, the court may find in No. 8383 that the PAO is an option agreement with the purchase price being $100,000 ($25,000 loan to James plus the AOS balance of

---

[3] Rule 26, Rules of the Land Court, requires a designated form of the "Findings of Fact and Decision" in proceedings to register title to accretion. However, the Rules of the Land Court neither requires nor precludes the filing of findings of fact and conclusions of law in other proceedings.

$75,000 being waived by Converse). Such finding may absolve Reed of any liability in No. 9262. If the land court finds that the PAO is a mortgage securing James' debt of $25,000, then the principal balance due on the AOS remains at $75,000 and will affect Reed's joint and several liability with James under the AOS.

Consequently, our remand of No. 8383 necessitates the vacation of the judgment in and remand of No. 9262. Depending on the disposition of No. 8383, the land court may reopen No. 9262 for further hearing in its discretion.

### V. CONCLUSION

We vacate the land court order of June 2, 1981 in No. 8383 and the judgment of January 14, 1983 in No. 9262 and remand both cases for further proceedings consistent with this opinion.[4]

Remanded.

*John H. Robinson (C. Andrew Englehart* with him on the briefs; *Robinson & Englehart,* Attorneys at Law, A Law Corporation, of counsel) for respondents-appellants.

*Michael J. Lum (Leslie W.S. Lum* with him on the briefs; Law Offices of *Lum & Lum,* of counsel) for petitioner-appellee.

---

[4] For the expeditious disposition of both cases, we suggest that they be consolidated upon remand.