897 P.2d 983

**In the Matter of the Application of MATSON NAVIGATION COMPANY, to register title to land situate at Honuaʻula, Island and County of Maui, State of Hawaiʻi.**

**Edward F. MASON, Appellant–Petitioner,**

v.

**WAILEA RESORT COMPANY, LTD., Appellee–Respondent.**

**No. 16686.**

Intermediate Court of Appeals of Hawaiʻi.

May 30, 1995.

Before ACOBA, J., Circuit Judge MILKS in place of BURNS, C.J., recused, and Circuit Judge WONG in place of WATANABE, J., recused.

ACOBA, Judge.

The issue presented is whether Petitioner–Appellant Edward F. Mason (Mason), an owner of land registered under the Torrens system of land registration,[1] was entitled to

Edward F. Mason, Wailuku, appellant-petitioner pro se on the briefs.

William S. Miller, Mark F. Ito and Lisa T. Redell (Goodsill Anderson Quinn & Stifel, of counsel), on the brief, Honolulu, for appellee-respondent.

1. The fundamental purpose of registering land title under the Torrens system is:
   to establish an indefeasible title free from all rights or claims not registered with the registrar of title with certain unimportant exceptions to the end that any one may deal with such property with the assurance that the only rights or claims of which he [or she] need take notice are those so registered.

*Akagi v. Oshita,* 33 Haw. 343, 348 (1935). Thus, anyone dealing with a registered land title would only need to take notice of those rights or claims that are registered in the manner prescribed by statute. *Honolulu Memorial Park, Inc. v. City and County of Honolulu,* 50 Haw. 189, 194, 436 P.2d 207, 210 (1967).

58

notice and a hearing under Hawai'i Revised Statutes (HRS) § 501–196 (Supp.1992) before the land court, *ex parte,* granted Respondent–Appellee Wailea Resort Company, Ltd.'s (Respondent) petition to amend Mason's transfer certificate of title by subjecting Mason's land to a declaration of covenants and restrictions different from the declaration then in effect. We agree with Mason that all registered owners of lots listed in Respondent's petition should have been notified of its filing and any registered owner objecting should be afforded a hearing on the petition's merits. Therefore, we vacate the applicable orders and remand the case.

The system of land title registration "commonly known as the 'Torrens System,'" is named after Sir Roberts Torrens who formulated the system by applying "the principles of registration of ownership in ships to registration in titles to land ... [in order] to have land ownership conclusively evidenced by a government certificate and thereby made determinable and transferable quickly, cheaply, and safely." 8A G. Thompson, *Commentaries on the Modern Law of Real Property* § 4353, at 76 (1963). "Under the Torrens system only the ultimate fact that a ... party has title to a particular parcel of land is registered, and a certificate [of title] indicating that fact is delivered to" the party. 7 R. Powell, *Powell on Real Property* ¶ 908[2], at 83–4 (1995). Thus, "all matters affecting title to registered property [must] be ... registered or memorialized so that the ... certificate kept on file by local officials accurately reflects the current status of the title." *Id.* ¶ 908[2], at 83–5 (emphasis omitted). Generally, then, a registered owner "holds the property free from all unregistered interests

except those which are specifically listed on the certificate of title or otherwise excepted by statute." *Id.* ¶ 908[2], at 83–6. The Torrens system of land title registration was first adopted in Hawai'i in 1903 under Act 56, and is now codified in Hawaii Revised Statutes (HRS) chapter 501. *In re Estate of Campbell,* 66 Haw. 354, 358, 662 P.2d 206, 207–09 (1983). It is within this context that we consider Respondent's petition to amend Mason's certificate of title.

Mason is one of the owners of land court registered lot 152 in a subdivision known as Wailea Kai Homesites, on the island of Maui. Lot 152 was purchased by Mason and his wife in 1980 from Wailea Development Company, Ltd. (Wailea Development). At the time of the purchase, Mason signed a receipt acknowledging receipt of a Property Report (Report).[2] The Report indicated that Respondent's predecessor, Wailea Development, reserved the right to subject Mason's land to covenants of a declaration "similar to but in substitution of the 1975 Declaration and/or the Interim Declaration."[3]

Specifically, the Interim Declaration reserved to Respondent's predecessor the "right at any time ... to ... [file] a supplemental declaration ... to effectuate the annexation of the [Wailea Kai Homesites] ... making said property become a part of the Wailea Property Owners Association and subject to the [1975 Declaration] ... [or] subject to any other plan or arrangement selected by [Respondent's predecessor] ... which plan or agreement would provide maintenance, services and assessments similar to those set forth in this Interim Declaration and/or the 1975 Declaration[.]"[4]

2. A copy of the receipt signed by Mason and the Report is attached as exhibit G to Respondent's memorandum in opposition to Mason's petition.

3. The Report which is attached as part of exhibit G to Respondent's memorandum in opposition, in relevant part, states:
   *In the Interim Declaration[,] we reserve the right to create and make the Wailea Kai Homesites subject to a different plan or arrangement similar to but in substitution of the 1975 Declaration and/or the Interim Declaration.* The substitute plan or arrangement would provide, through assessments, maintenance and services similar to those provided for in the 1975 Declaration and the Interim Declaration. In

any such other plan or arrangement the parties being assessed may not have any right to vote in or any right to representation or other voice in establishing the amount of, levying, allocating or collecting the assessments or in the administration of the maintenance and services.
(Emphasis added.)

4. The Interim Declaration, attached to Clark Champion's affidavit filed in support of Respondent, states in pertinent part in article II, section 7 that:
   Notwithstanding anything to the contrary herein contained, *the Declarant reserves the right at*

The Interim Declaration is noted on Mason's land court Certificate of Title No. 284,-659 as one of the "[e]ncumbrances[,]" specifically, "Perpetual Covenant[ ] in [Document number] 1034902."

On May 1, 1992, Respondent filed its Petition for Order re Annexation of Lots (Wailea Kai Homesites) to Wailea Community Association Declaration (the Petition). The Wailea Community Association Declaration of Covenants and Restrictions, dated December 19, 1986, (WCA Declaration) was apparently filed on December 29, 1986, in the land court.[5] The Petition requested "amendment [to] various Transfer Certificates of Title" of landowners in Wailea Kai Homesites, including Mason's certificate. Asserting that "[m]any of the Lots within Wailea Kai Homesites [were] already formally annexed and subject to the WCA Declaration[,]" the Petition stated that Respondent "desire[d] to make the Remaining Lots ... subject to all the terms, restrictions, covenants, conditions and provisions of the WCA Declaration." The Petition then requested the court "to note the annexation ... to the WCA Declaration ... on the [various] Transfer Certificates of Title" of the Wailea Kai landowners.

As the basis for its request, Respondent claimed to be the "holder of the Declarant's rights under the Interim Declaration" "[p]ur-

suant to that certain Limited Warranty Deed dated February 10, 1989 and filed as Land Court Document No. 1612904[.]" The warranty deed is not in the record on appeal.

Respondent further represented that, as required under the Interim Declaration, the "maintenance, services and assessments [in the WCA Declaration were] similar to those set forth in the Interim Declaration and the [1975 Declaration]." Respondents did not serve notice of the Petition's filing on the registered owners whose certificates were to be amended.

On May 1, 1992, the land court approved the Petition without a hearing, and entered an order directing the assistant registrar of the land court to note the encumbrance on the certificates involved, including Mason's certificate.

On July 27, 1992, Mason filed a petition for an order to cancel the land court's May 1, 1992 order (Mason's Petition).[6] Mason's Petition claimed that the Petition "was filed without any prior notice to [Mason] or any of the owners of the lots [affected as] ... required by HRS § 501–196." It declared that Respondent filed the petition "with actual or constructive notice that the landowners ... objected to annexation of their lots under the [WCA Declaration] [ ] and intentionally failed to give said landowners notice." Ma-

---

*any time* hereafter or from time to time (including the period after the subdivision and sale or other conveyance or transfer of a residential lot or common area lot):

. . . .

(c) *To do any and all things required, necessary or convenient, including, the filing of a supplemental declaration or similar document, in order to effectuate the annexation of the property* described in said Exhibit "A" [ (Wailea Kai Homesites) ] (and each subdivided lot thereof) and *making said property become a part of the Wailea Property Owners Association and subject to the Declaration of Covenants and Restrictions dated January 17, 1975* [ (1975 Declaration) ] . . . .

(d) *To do any and all things required, necessary or convenient in order to create and make the Wailea Kai Homesites subject to any other plan or arrangement selected by Declarant,* including but not limited to, a trust arrangement, *which plan or arrangement would provide maintenance, services and assessments similar to those set forth in this Interim Declaration and/or the 1975 Declaration;* it being understood that in any such other arrangement the

properties and persons being assessed, including the Wailea Kai Homesites, may not have any right to vote in or any right to representation or other voice in establishing the amount of, levying, allocating or collecting the assessments or in the administration of the maintenance and services.

(Emphases added.)

5. A copy of the WCA Declaration is attached to Clark Champion's affidavit.

6. In Mason's Petition, Mason petitioned the court "on behalf of himself and as attorney-at-law for other interested landowners[.]" On appeal, Respondent asserts that this appeal "should be strictly limited to the annexation of Mason's lot to the WCA Declaration." In that connection, Mason does not contend that he represents anyone other than himself. He maintains that he has standing to challenge the "entire May order" because "[i]f the land court did not have jurisdiction to enter the order then it simply does not have the power to do so regardless of who complains about it or doesn't complain about it and who accepted it or doesn't accept it."

son admitted that section 7 of the Interim Declaration "permits the successor declarant to make the Wailea Kai Homesites lots subject to a plan or arrangement which 'would provide maintenance, services and assessments similar to those set forth in the Interim Declaration'" but argued that the WCA Declaration was not "similar" but instead "impose[d] terms, conditions and encumbrances upon the lots far in excess of anything contemplated at the time said lots were purchased."

On August 18, 1992, Respondent filed its answer and a counter petition. On August 25, 1992, it filed a memorandum in opposition.

On August 26, 1992, at a telephonic "pretrial" conference, Mason limited his challenge to the notice issue. Additionally, the court and counsel "agree[d] that there [would] be no exhibits and no witnesses" at the hearing on the "jurisdiction of the first petition and merits of [Mason's] [P]etition [which] is basically a Motion to Dismiss."

On August 28, 1992, a telephonic hearing was held on Mason's Petition. Mason's premise was that the land court lacked authority to enter its May 1, 1992 order because he and other owners had not received notice of the Petition prior to its determination. On the other hand, Respondent argued that the Interim Declaration had put Mason on "notice" and that the Declarant, here Respondent, could, under its terms, encumber his property with a declaration different from either the Interim Declaration or the 1975 Declaration without any further notice.

The court denied Mason's Petition without giving any reasons. An order denying Mason's Petition was filed on November 12, 1992. At the hearing, the court had orally granted Respondent's counter petition, viewing it as a "reaffirmation of the validity of the [May 1, 1992] order." But when presented with objections to a proposed order granting the counter petition, the court signed the order denying Mason's petition only. Thus, no written order granting the counter petition was filed. As a result, the court, in

effect, took no action on the counter petition, leaving its prior May 1, 1992 order undisturbed.[7]

## I.

HRS § 501-1 (1985) grants the land court "exclusive original jurisdiction of all applications for the registration of title to land and ... over such other questions as may come before it under this chapter[.]" HRS § 501-106 (Supp.1992) states, in relevant part, that "no memorandum shall be made upon any certificate of title by the ... assistant registrar, ... except ... upon the order of the court, for cause shown." It cannot be disputed, then, that the land court had apparent authority to order that Mason's Certificate of Title be amended by noting, thereon, the additional encumbrance of the WCA Declaration.

■ Respondent claims, however, that HRS § 501-106 gives the court power to order an amendment without regard to notice or a hearing. But that claim is too broad. HRS § 501-106 states as a general proposition that, in some instances, a certificate of title shall not be amended without an order of the court. This restriction proceeds logically, from the fact that the certificate represents title to land. 7 R. Powell, *Powell on Real Property* ¶ 908[2], at 83–4 (1995). Consequently, the certificate cannot be amended unless such amendment is duly authorized as prescribed by statute. HRS § 501-106 itself, however, does not address the question of whether a hearing and notice is appropriate in any particular circumstance.

Nor does *In re Damon*, 5 Haw.App. 304, 689 P.2d 204 (1984), empower the land court to grant a petition without regard to notice as Respondent contends. *Damon* was not concerned with whether notice was required to be given a party in interest but with whether the subject matter of the lawsuit, the breach of a land option agreement, was within the jurisdiction of the land court. We held that the jurisdiction of the land court to hear questions arising under HRS chapter

7. Under the rationale of our decision, whether the court granted the counter petition or not would not alter our holding.

501 was extensive enough to include the lawsuit and the court's jurisdiction was not limited to the reasons for filing a petition enumerated in HRS § 501–196.

In defense of the procedure followed by the land court, Respondent also cites Rules of the Land Court (RLC) Rule 65. RLC Rule 65 is a recital of the enumerated reasons for which an interested person may file a land court petition to amend a certificate following the filing of the original certificate of title. Because Respondent claims RLC Rule 65 controls, it must have brought the Petition for one of the prescribed purposes set out in RLC Rule 65.[8] In pertinent part, Rule 65(b) states, "Any registered owner or other person in interest may at any time apply by petition to the court, upon the ground ... that new interests have arisen or been created which do not appear upon the certificate[,] ... or upon any other reasonable ground."

Thus, arguably, because the petition requested a new entry to be made on the registered owners' certificates, the petition on its face might be treated as one relating to newly arisen or created interests which do not appear on the certificates. Certainly, because Respondent sought approval of the court to amend the certificates of other parties, the Petition would ostensibly fit within the general catchall classification of "any other reasonable ground."

Respondent maintains that RLC Rule 65 does not require notice to be given. RLC Rule 65 is silent as to the necessity of giving notice to parties in interest. But RLC Rule 65 merely repeats verbatim those reasons for which petitions may be filed as already set forth in HRS § 501–196. On its face, HRS § 501–196 clearly requires that notice to all parties in interest be given before the court's determination of a petition. *Cf. In re Estate of Campbell*, 66 Haw. 354, 358, 662 P.2d 206,

209 (1983) (HRS § 501–85 (Supp.1975) on its face sets forth procedure for the consolidation or subdivision of registered land).

Therefore, if a petition seeks to amend a certificate of title because of any of the enumerated purposes specified in HRS § 501–196, the land court is granted "jurisdiction to hear and determine the petition after notice to all parties in interest[.]" HRS § 501–196. Unlike HRS § 501–196, RLC Rule 65 says nothing of the notice requirement set forth in HRS § 501–196. However, RLC Rule 65 may not invalidate the HRS § 501–196 statutory notice requirement. "The power of [the] court to make ... rules ... is always subject to the limitation that such rules must not contravene a statute...." *Territory v. Kauhane*, 25 Haw. 307, 308 (1919) (per curiam) (involving a supreme court rule regarding costs). *Cf. In re Doe Children*, 73 Haw. 15, 19, 827 P.2d 1144, 1146 (1992) (rules enacted by administrative agency cannot contravene the statute the agency is implementing); *Puana v. Sunn*, 69 Haw. 187, 189, 737 P.2d 867, 870 (1987); *Stop H–3 Ass'n v. State*, 68 Haw. 154, 161, 706 P.2d 446, 451 (1985); *Agsalud v. Blalack*, 67 Haw. 588, 591, 699 P.2d 17, 19 (1985); *Topliss v. The Planning Comm'n*, 9 Haw.App. 377, 392 n. 11, 842 P.2d 648, 657 n. 11 (1993); *Jacober v. Sunn*, 6 Haw.App. 160, 167, 715 P.2d 813, 819 (1986). Thus, HRS § 501–196, and not RLC Rule 65, is controlling in this case.

Respondent having filed its Petition for one of the purposes listed under RLC Rule 65, its filing came within the purview of HRS § 501–196, and, pursuant to that statute, notice to all parties in interest was required to be given.

Mason argues that under HRS § 501–106, notice was required to be given to him and the other affected registered owners before the court acquired jurisdiction to hear and determine the Petition. It is undisputed that

8. Rules of Land Court Rule 65(b) allows a petition to be filed for the following reasons:

that registered interests of any description, whether vested, contingent, expectant or inchoate have terminated and ceased; or that new interests have arisen or been created which do not appear upon the certificate; or that any error, omission or mistake was made in entering a certificate or any memorandum thereon; or that the name of any person on the certificate has been changed; or that the registered owner has been married, or if registered as married, that the marriage has been terminated; or that a corporation which owned registered land and has been dissolved has not conveyed the same within three years after its dissolution; or upon any other reasonable ground.

Respondent did not serve notice of its Petition on the affected registered owners, including Mason. Accordingly, the certificates of Mason and the other registered owners were ordered amended by the land court without prior notice to them in violation of HRS § 501–196, assuming that the registered owners were "parties in interest."

## II.

■ The proposed amendment of their certificates would make the registered owners "parties in interest" entitled to notice under HRS § 501–196. "Interest" is a general term which "denote[s] a right, claim, title, or legal share in something." *Black's Law Dictionary* 812 (6th ed. 1990). Certainly the owners had rights, claims, and titles that would be affected in several ways by the proposed amendment to their certificates of title.

The covenants here were restrictive and burdened the land affected. *See Waikiki Malia Hotel, Inc. v. Kinkai Properties Ltd. Partnership,* 75 Haw. 370, 862 P.2d 1048 (1993). The WCA Declaration would affect the owners' rights by imposing new restrictive covenants on their land.

The WCA Declaration is also, as Mason contended, subject to a registered owner's potential claim that it was not "similar to . . . the 1975 Declaration and/or the Interim Declaration" and thus could not be properly substituted in place of the existing declaration of covenants.

Finally, the WCA Declaration would constitute a new encumbrance on the registered owners' certificates of title, thereby placing new qualifications on their titles. Generally, "[e]very registered owner of land which is brought under the Torrens system holds the land free from any and all adverse claims, rights and encumbrances not noted on the certificate of title[.]" 7 R. Powell, *Powell on Real Property* ¶ 909[8], at 83–33 (1995). Because the Petition prayed for a new encumbrance to be noted on their certificates, the "exact status" of the owners' titles to land was affected, and so the registered owners were clearly "parties in interest" entitled to notice of the Petition.

## III.

Respondent claims the Interim Declaration constituted "notice" that a different declaration would be imposed on the land involved. We find it difficult to equate the reservation of a right exercisable, if at all, at some indefinite point in time with notice of the specific provisions of the WCA Declaration sought to be imposed by Respondent. That aside, however, notice of a petition to amend a certificate of title under HRS § 501–196 is a matter separate and distinct from the "notice" of a possible change in real covenants arising from purchase documents. As indicated previously, notice under HRS § 501–196 is for the purpose of ensuring that the certificate on file "accurately reflects the current status of the title." Even if Mason and others like him knew, as Respondents claim, that "the lots in the Wailea Kai Homesites would eventually be made subject to another community plan or arrangement[,]" they had the right to know *when* title to their property would be so encumbered. Having notice that title may at some indefinite time be subjected to a declaration of covenants does not satisfy the requirements of HRS § 501–196.

## IV.

■ Respondent claims that Mason's appeal should be limited to his land alone because no other registered owner was made a party to the proceeding. We disagree for two reasons. The purpose of requiring that notice be given to parties in interest is obviously to afford such parties the opportunity to object to the Petition. It may be that some, few, or none of the landowners may respond, but the purpose of HRS § 501–196 is to ensure that those who wish to respond are given the means to do so. Obviously, until such notice procedures are completed, it is impossible to conclude that other owners would not object to the Petition. After all, Respondent here seeks an order to amend, not its own transfer certificate of title, but the certificates of other parties. Further, HRS § 501–196, as we have pointed out, requires that parties in interest must be notified and afforded a hearing, if they wish, before the court may determine the merits of

the petition. The court issued its order without such notice. Therefore, we hold that the court's May 1, 1992 order was of no effect and binds no one, the requisite notice not being served on Mason and other affected registered owners.

Finally, Respondent argues that Mason had the opportunity to contest the merits of the Petition but failed to do so at the hearing on August 18, 1992. But the court decided at that hearing that it had jurisdiction to issue the May 1, 1992 order, a decision which foreclosed any consideration of the Petition's merits. Moreover, as we have noted, the failure to notify all interested parties nullified the *ex parte* May 1, 1992 order.

Upon remand of the case, the land court shall order Respondent to serve notice of the Petition on all registered owners affected by the Petition and such other interested parties, if any, as may be required to be served under HRS § 501–196. In the event the matter proceeds to a hearing on the merits of the Petition, our opinion shall not be taken as expressing any view on the merits of the case.

## V.

For the foregoing reasons, we vacate the Order Denying Petition for Order Cancelling "Order Re: Annexation of Lots (Wailea Kai Homesites) to Wailea Community Association Declaration" filed November 12, 1992 and the order filed May 1, 1992 granting the Petition for Order re Annexation of Lots (Wailea Kai Homesites) to Wailea Community Association Declaration, and remand the case for proceedings consistent with this opinion.