JOSEPH HEW *v.* ALFRED ARUDA.

No. 4831.

December 4, 1969.

Richardson, C.J., Abe, Levinson, Kobayashi, JJ.,
and Circuit Judge Kabutan in Place
of Marumoto, J., Disqualified.

452

OPINION OF THE COURT BY LEVINSON, J.

This case began as an action to recover the price agreed to be paid for goods sold and delivered. The plaintiff Joseph Hew alleged that in 1957 he sold some cattle to the defendant Alfred Aruda and his brother, Enos Aruda, who operated the Aruda Brothers Ranch on the island of Maui. Only Alfred was named defendant in this action, Enos having died. At the jury-waived trial it was shown that the debt sued on had been discharged but a claim for rent of a one-sixth interest in the land was raised by the testimony of the plaintiff Hew. At the end of the trial the complaint was amended to conform to the evidence and the court held in favor of the plaintiff.

The plaintiff was the bookkeeper for the Aruda Brothers Ranch from 1957 to 1965. Sometime in 1957 he purchased from John Aruda, Jr. a one-sixth interest in the 500 acres of land upon which the ranch was operated. The land was left by John Aruda, Sr. to his six children equally as co-tenants. Two of the three brothers, Enos and Alfred, bought another one-sixth interest each in the

land from two of the three sisters. The two brothers entered into a general partnership agreement in 1957 and registered the partnership in 1959. Enos served as the managing partner of the ranch.

At the time the agreement to purchase the cattle was made in 1957, the plaintiff claimed that the partnership orally agreed to rent his one-sixth interest in the land. The annual rental was to equal the yearly interest which the plaintiff was paying on the money he had borrowed from the bank in order to finance his purchase of the one-sixth interest in the land. The oral agreement was alleged to have been made on October 1, 1957 and this suit was brought nine years, three months and 22 days later on January 23, 1967. The defendant denied the existence of any rental agreement. The court found that one payment of $810.00 was made on January 31, 1960 to the plaintiff who applied it on account of his claim for rent. The other payments made to the plaintiff were found by the court to have discharged the debt owed the plaintiff for the cattle.

The plaintiff testified that nine yearly statements showing the amounts due as rent were presented annually between 1957 and 1965 to Enos Aruda. The original statements were not offered in evidence by either party, nor were their existence and whereabouts at the time of trial established. Only the plaintiff's carbon copies of the statements were offered by him and admitted into evidence as proof of the amounts due for the years 1957 to 1965. Further evidence of the debt was introduced in the form of an entry in the partnership's books and on the final balance sheet which the plaintiff kept in his possession until the partnership was dissolved. On cross-examination the plaintiff denied that he had prepared all of the statements at the same time in 1965. There was no rebuttal as Enos Aruda was then deceased.

As part of his theory that no agreement to pay rent existed, the defendant attempted to introduce an oral statement of the deceased managing partner, Enos Aruda, to Judge Wendell Crockett, his attorney at that time. The oral statement was to the effect that there were no outstanding bills against the partnership other than some miscellaneous bills then owing which were irrelevant to the present suit. The testimony of Judge Crockett was stricken as hearsay upon timely motion by the plaintiff. The defendant argued that the hearsay statement was admissible as rebuttal because the declarant had since died, making the statement a necessary, if not crucial, part of the defendant's case.

The trial court found for the plaintiff in the sum of $3,618.65 plus interest, costs and statutory attorney's commissions. The court found that there had been an account stated for this amount; that the six-year statute of limitations had not run as the yearly accounts stated renewed the claims which at the times the statements were rendered were not yet barred by the statute; and that the statute of frauds was inapplicable as the rental agreement was on a year-to-year basis and therefore permissible under RLH 1955 § 240-4 (now HRS § 666-4).

The defendant appeals from the judgment contending (1) that the testimony of Judge Crockett is admissible to show the non-existence of the rental agreement or the lack of assent to the account rendered; (2) that if there was an agreement it is barred by the statute of frauds; (3) that the claim for rent prior to 1962 is barred by the statute of limitations; and (4) that an account stated may not be used to avoid the statute of frauds or the statute of limitations.

We reverse and remand for a new trial.

## I. THE STATEMENT OF THE DECEASED MANAGING PARTNER.

A threshold question raised at trial was whether the alleged rental agreement existed or was a fabrication of the plaintiff, who was the bookkeeper for the partnership. The plaintiff had full access to the financial records of the partnership which were used at trial to prove the agreement and the accounts stated. He had every opportunity to adjust the records to suit his purposes. Therefore, Enos Aruda's statement to Judge Crockett that he had no recollection of any further outstanding bills was relevant to the issue of the existence of the debt and the account stated. If believed by the trier of fact, it could have been dispositive of the entire case. There was no way of proving the matter except by hearsay testimony since the original declarant was forever unavailable because of his death.

Although not adopted in Hawaii, the so-called "dead man's statute" as it operated in other jurisdictions totally disqualified as a witness the survivor of a transaction with a decedent when the survivor's testimony was offered against the decedent's estate. *See* 2 Wigmore on Evidence § 578 (3d ed. 1940). This archaic rule of disqualification was based upon a belief that without it fraudulent claims against decedents' estates might prevail. It was also justified as a means of putting the parties in equal positions at trial. "If death has closed the lips of the one party, the policy of the law is to close the lips of the other." *Louis* v. *Easton,* 50 Ala. 470, 471 (1873) *quoted in* 2 Wigmore, *supra* at 696. This latter rationale assumed that statements of the decedent reported by third persons or by the survivor would be barred as violative of the hearsay rule.

Even without a "dead man's statute," the hearsay rule excluding statements of a decedent reported by third

persons or the survivor lingers on, as demonstrated by the present case. A blanket rule of exclusion would keep what might be trustworthy and necessary evidence from being admitted. Obviously, exclusion of such evidence gives an undue advantage to the opposing party who is not disqualified by a dead man's statute but is still able to invoke the hearsay rule.

This court has found convenient exceptions to the hearsay rule in order to allow the admission of statements by a decedent. *See Teixeira* v. *Teixeira,* 37 Haw. 64 (1945) (state of mind of deceased donor admissible in action to set aside a gift); *Territory* v. *Duvauchelle,* 28 Haw. 350 (1925) (statement of decedent-victim to show his presence in the vicinity of an alleged murder at the time the murder was allegedly committed). Other states have had the foresight to enact modern legislation or promulgate enlightened rules of evidence making statements of decedents admissible in certain instances without resort to case-by-case exceptions. *See, e.g.,* New Jersey Supreme Court Rules of Evidence, Rule 63(32) (1965); M.G.L.A. c. 233 § 65; Calif. Evid. Code §§ 1260-61 (1965); *see generally* 5 Wigmore on Evidence § 1576 at 437-442 (3d ed. 1940).

The shortcomings of the rule barring statements of decedents are obvious. Relevant and competent evidence, otherwise admissible, is excluded even when it is the only available evidence. This forces the finder of fact to decide a case with a minimum of information concerning the facts in issue. We think this is an unsound approach to the pursuit of truth in an adversary context.

Since the decedent is obviously unavailable, there is great need for this particular testimony to be introduced into evidence. No alternative means of introducing the evidence exists. While the great vice of hearsay statements is the potential lack of trustworthiness, this single

liability is not enough to justify the exclusion of a decedent's statement when accuracy can be shown in other ways. By focusing the inquiry on the circumstances surrounding the declarant's position when he made the statement, a determination of trustworthiness can be made by the trial judge. Certain safeguards must be met in order to guarantee that trustworthiness, however. We hold that a statement is not excluded by the hearsay rule if the declarant is unavailable as a witness and the court finds that the statement was made in good faith, upon the personal knowledge of the declarant, and while his recollection was clear, unless other circumstances were present indicating a clear lack of trustworthiness. This very reasonable limitation of trustworthiness is necessary since the party against whom the statement is offered has no opportunity to test the hearsay by cross-examination.[1]

In the present case Enos Aruda's statement to his attorney was an attempt to explain the state of the partnership's current financial affairs. There is no evidence that his recollection was other than clear or that the statement was not made in good faith. The defendant should at least be given the chance to prove on retrial that the statement was made under circumstances which offer the

---

[1] A clear lack of trustworthiness might be shown by a statement made "in response to the instigation of a person engaged in investigating, litigating, or settling a claim," or "in contemplation of pending or anticipated litigation in which he [the declarant] was interested." See Preliminary Draft of the Proposed Rules of Evidence for the United States District Courts and Magistrates, Rule 8-04(b)(2) and Advisory Committee's Note at 210-11 (March 1969).

This approach is substantially that of Rule 63(4)(c) of the Uniform Rules of Evidence (1953) and a sound middle ground between Rule 503 of the Model Code of Evidence (1942) which only requires that the declarant be *unavailable* as a witness and the view which opposes any liberalization in the exceptions to the rule against hearsay. See Sullivan v. Dumaine, 205 A.2d 848, 851 (N.H. 1964). For an alternative proposal and a chronicle of the development of the law in this area, see Chadbourn, *Bentham and the Hearsay Rule—A Benthamic View of Rule 63(4)(c) of the Uniform Rules of Evidence*, 75 Harv. L. Rev. 932 (1962).

necessary assurances of accuracy consistent with the guidelines set down in this opinion.

## II. THE ACCOUNT STATED.

The defendant specifies as error the failure of the trial court to deny the plaintiff's claim for rent as barred by (1) the statute of frauds and (2) the statute of limitations with respect to rent due prior to 1962. These specifications of error need not be considered if the finding of the trial court that there were "accounts stated" is correct. This is because an action for an account stated springs from a new promise, which may be express or implied, and not from the original indebtedness which may be unenforceable. *Stewart* v. *Spalding,* 23 Haw. 502, 521 (1916); *see Scott* v. *Hawaiian Tobacco Plantation,* 21 Haw. 493, 495-96 (1913); 6 Corbin on Contracts § 1309 (1962). If an account is stated before the items of an account are barred by the statute of limitations, then the statute is tolled and a new claim for relief arises. 6 Williston on Contracts § 1863 at 5233-34 (rev. ed. 1938). If the debt is already barred by the statute, then "it is necessary to show either an unconditional promise to pay the debt, or a clear and unqualified acknowledgment of the debt from which a promise to pay is to be implied, or a conditional promise to pay and the fulfillment of the condition." *First American Savings & Trust Co.* v. *Low,* 23 Haw. 696, 699 (1917).

Trial courts should be very careful to keep the concept of an account stated from becoming a legal artifice enabling the crafty to fabricate imaginary claims and the dilatory to redeem unenforceable debts. We must further observe that "courts are more loath to infer assent from acts or omissions in response to an account rendered by a fiduciary." 6 Williston on Contracts § 1862A at 5230 (rev. ed. 1938). For those reasons it is important to

review carefully the decision of the trial court that there was an account stated. The fact situation presented is singular in the sense that grave injustice may prevail if an unjustified account stated is allowed. We are faced with a case where a fiduciary, the bookkeeper of the defendant's partnership, testified that he rendered an account periodically to the managing partner of the firm, Enos Aruda. Since Enos had died, the only direct evidence concerning the existence of an account stated comes from the person who is most likely to profit from it, the plaintiff and fiduciary, Joseph Hew.

Liability upon an account stated requiries an admission of indebtedness in a definite sum and a promise, express or implied, to pay the same. *Stewart* v. *Spalding,* 23 Haw. 502, 521 (1916). As a general rule, "[i]t is always said that there is no account stated unless both parties have expressed assent to it as correct." 6 Corbin on Contracts § 1313 at 265 (1962). The issue in this case reduces itself to whether the retention of the statements and financial records by Enos Aruda was enough to signal his assent to the amount due, if these documents were in fact made and delivered to him. Certainly silence in the light of previous dealings between parties may operate as assent. 6 Corbin on Contracts § 1313 at 270-71 (1962). Yet where a statement is proposed as a settlement of an unliquidated claim, as distinguished from an arithmetical account, assent is less likely to be by silence. *Chinn* v. *Lewin,* 16 F.2d 512, 515 (D.C. Cir. 1926) (lawyer's fees); 6 Corbin § 1313 at 275 (1962).

It is well settled that this court will not reverse the findings of fact made in a lower court unless there is clear error. H.R.C.P., Rule 52(a); *Low* v. *Honolulu Rapid Transit Co.,* 50 Haw. 582, 445 P.2d 372 (1968). For the trial court to have found that an account stated was present, it would have had to find that Enos Aruda know-

ingly received the annual statements and knew of the entries in the financial records made by the plaintiff. The court must also have found that the circumstances surrounding Enos Aruda's failure to object justified a finding of assent. Such a finding was possible under the evidence admitted at the trial. Of course on retrial it is possible that a different conclusion may be reached. As this court said long ago in *Stewart* v. *Spalding,* 23 Haw. 502, 521 (1916): "[A] specific objection to certain items or a denial of all liability is not necessary to be shown to defeat a claim for where, as in the present case, the conduct of the party excludes the idea of acquiescence, an account stated is not shown."

The facts in this case present a situation ripe for abuse. Where a fiduciary relationship exists between two parties, as in this case between a bookkeeper and his employer, the activities of the fiduciary must be closely scrutinized when he himself is benefited to the detriment of the party for whom he acts as agent. We rest assured that on retrial great care will be taken and guidance provided by the trial court to guarantee the fairest of trials in determining whether the plaintiff's claim is proper and enforceable or a sham.

Reversed and remanded for a new trial.

*Alexander C. Marrack (Anthony & Waddoups* of counsel) for defendant-appellant.

*Burnham H. Greeley (Padgett, Greeley, Marumoto & Akinaka* of counsel) for plaintiff-appellee.