WAIMEA FALLS PARK, INC., Plaintiff-Appellee, *v.* FRANCIS K. BROWN, Defendant-Appellant, and NATHAN BROWN, ROBERT BROWN, JOHN and MARY DOES 1-20, AND DOE PARTNERSHIPS, CORPORATIONS or OTHER ENTITIES 1-20, Defendants

NO. 9963

(CIVIL NO. 77381)

OCTOBER 24, 1985

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

Defendant Francis K. Brown (Francis) appeals the lower court's award of partial summary judgment to Plaintiff Waimea Falls Park, Inc. (Waimea). We vacate the judgment that Waimea is the sole owner of the land in dispute, affirm the judgment that Francis and the other defendants have no interest in the land, and that Waimea is entitled to immediate possession, and remand for further proceedings.

On May 5, 1983, Waimea filed a complaint against Francis, Nathan Brown, Robert Brown[1] and other unidentified defendants alleging that Waimea is the owner of the property situated at 59-874 Kamehameha Highway, Haleiwa, Hawaii, and described as Lot 1-E (hereafter the parcel in dispute will be referred to as Lot 1-E), area 0.319 acres, as

---

[1]The record indicates that Nathan Brown is Francis' son, but does not indicate who Robert is. Default was entered against Nathan and Robert for their failure to answer.

shown on Map 6 of Land Court Application No. 561,[2] and that Defendants are in possession and claim or may claim an interest in Lot 1-E.

The complaint alleged that Waimea and its predecessors in title[3] had rented Lot 1-E to Defendants under a series of oral rental agreements, followed in 1952 by written leases and rental agreements; however, the last of the agreements had expired on March 31, 1982, but Defendants were continuing to occupy Lot 1-E and refusing to vacate, notwithstanding Waimea's written demand. Waimea asked (1) that it be declared the sole owner of Lot 1-E; (2) for a writ of possession; (3) that Defendants be adjudged not to have any right, title or interest in Lot 1-E; (4) for damages; and (5) for attorney's fees and costs.

Francis answered the complaint, admitting the rental agreements, but alleging he owned an undivided interest in Lot 1-E. He alleged set off[4] and that the suit should have been brought in the Land Court.[5] Francis also counterclaimed alleging he owned an undivided interest in the entire "1,780.71 acres" in the ahupuaa[6] of Waimea Valley and, thus, in Lot 1-E. Francis prayed that the claims of all persons to Lot 1-E be adjudicated and, if Waimea was not found to be the sole owner, the

---

[2]Land Court Application No. 561 was filed on February 12, 1925, and registered the 422 588ths undivided interests of Annie E. Mott-Smith, Mary Frances Van Valkenburg, Oahu Railway & Land Co., and Hawaiian Land and Improvement Co. in Waimea Valley. Lot 1-E is a parcel within the valley. The owners of the other undivided interests were not made parties to the application.

[3]Waialua Agricultural Co., Ltd., Helemano Land Co., Ltd., Castle & Cooke, Ltd., and Bishop Corporation were Waimea's predecessors in title. Bishop Corporation is Waimea's "parent" corporation.

[4]The record does not indicate what Francis was relying on as set off.

[5]The issue of jurisdiction was not raised on appeal. *Sua sponte,* we hold that the circuit court had jurisdiction over this matter. Hawaii Revised Statutes (HRS) chapter 501 does not contemplate that, after registration, every controversy involving registered land must be decided by the land court. The land court has limited jurisdiction under the statutes. *In re Campbell,* 66 Haw. 354, 358, 662 P.2d 206, 209 (1983); *In re Damon,* 5 Haw. App. 304, 689 P.2d 204 (1984). We find nothing in the statutes or our case law indicating that the land court has exclusive jurisdiction over matters affecting registered land. *See* HRS §§ 501-151, -152, -153, -154, -155, -156 (1976).

[6][I]n ancient Hawaii, the division of land known as an ahupuaa generally ran from the sea to the mountains. Such division enabled a chief and his people to obtain fish and seaweed from the ocean, and fuel, canoe timber and mountain birds, and the right of way to obtain those things. *In Re Boundaries of Pulehunui,* 4 Haw. 239.
*Kalipi v. Hawaiian Trust Co.,* 66 Haw. 1, 6, 656 P.2d 745, 748 (1982).

property be partitioned. Waimea answered the counterclaim, and, in addition to its claim of "paper" title, alleged "adverse possession," "estoppel in its various forms," and "release and waiver."

Subsequently, Waimea filed its motion, supported by documents and affidavits, for partial summary judgment declaring Francis to have no interest in the property, for a writ of possession, and dismissing the counterclaim.[7] The motion was granted, and judgment and certification under Rule 54(b), Hawaii Rules of Civil Procedure (HRCP), was entered on February 24, 1984. The judgment read in pertinent part as follows:

(1) The motion for partial summary judgment be and is hereby granted.

(2) The Court finds and declares that Defendants Francis K. Brown, Nathan Brown and Robert Brown, and each of them, have no right, title or interest in all or any part of the property described in paragraph 3 of the Counterclaim of Defendant Francis K. Brown filed herein on June 15, 1983 (being the property described in Land Court Transfer Certificate of Title No. 172,343 issued to Waimea Falls Park, Inc.) whether by virtue of that certain March 26, 1929 Agreement between Lucy Antone Macario Joseph and Timothy Brown (as recorded in the Bureau of Conveyances of the State of Hawaii in Liber 15526 at Page 294) or otherwise.

(3) Plaintiff Waimea Falls Park, Inc. is entitled to immediate possession of Lot 1-E (address: 59-874 Kamehameha Highway, Haliewa [sic], Oahu), being a portion of the property described in Paragraph 2 above. Plaintiff is also entitled, without further notice, application or hearing, to issuance of a writ of possession directing the Sheriff of the State of Hawaii, or his deputy, or any police officer of the City and County of Honolulu, to remove Defendants Francis K. Brown, Nathan Brown, Robert Brown and all persons holding or occupying said Lot 1-E by or through said Defendants or any one of them, including all of their personal belongings and properties and put Plaintiff Waimea Falls Park, Inc., or their agents, in full possession of said Lot 1-E.

---

[7] Waimea requested that the court reserve for trial the questions of reasonable rental value for Lot 1-E, and attorney's fees and costs.

(4) The Counterclaim filed by Francis K. Brown herein on June 15, 1983 be and is hereby dismissed with prejudice.

Francis' motion for reconsideration was denied on April 18, 1984, and he timely appealed.

The question on appeal is whether, viewing the evidence in the record in the light most favorable to Francis, there is a genuine issue of any material fact and that Waimea was not entitled to judgment as a matter of law. *Lau v. Bautista,* 61 Haw. 144, 598 P.2d 161 (1979); *Carrington v. Sears, Roebuck and Co.,* 5 Haw. App. 194, 683 P.2d 1220 (1984).

I.

Waimea's motion for summary judgment, being based on the "pleadings, records and files," implicitly asked the trial court to rule that Waimea was the sole owner of Lot 1-E. In granting Waimea's motion, the trial court did so. On the basis of the record in this case and Equity No. 2989, which is discussed below, Waimea has not shown that it is the sole owner of the ahupuaa of Waimea or Lot 1-E. Rather, the records show that Waimea owns an undivided interest therein in common with the estate of Lucy Antone Macario Joseph (Lucy) or her heirs.

Lot 1-E is a small portion of the ahupuaa of Waimea, Royal Patent Grant 880, Land Commission Award 13 to Paalua, and is located on Kamehameha Highway in Waimea, adjacent to the entrance to Waimea Falls Park. Waimea claims title to the entire ahupuaa, the valley of Waimea, consisting of approximately 1,800 acres, including Lot 1-E. Francis claims title to a 1/98th[8] undivided interest in the valley by virtue of an agreement of sale between Lucy, as seller, and Timothy Brown (Timothy), Francis' father, as buyer, dated March 26, 1929.

Waimea's claim of title to the unregistered 166/588ths undivided interest is based on the commissioner's deed in *Waimea Land Co. v. Achiu,* Equity No. 2989 (Equity No. 2989), a partition action filed on

---

[8]Here and in the court below, the parties have proceeded on the basis that Francis is claiming a 1/98th undivided interest and that Waimea holds title to the other undivided 97/98ths. However, the records here and in Equity No. 2989 do not reveal just how much interest Lucy owned. The first indication that Lucy may have owned 1/98th interest appears in a quitclaim deed from Timothy to Francis dated April 3, 1981.

May 18, 1929, in the first circuit court. Because Equity No. 2989 bears directly on this action, we have taken judicial notice of those proceedings, *Sapp v. Wong,* 3 Haw. App. 509, 654 P.2d 883 (1982), and have examined the record therein. The commissioner's deed of May 26, 1930, recites that all "right, title and interest" of the "former owners" of the property was sold at auction to Waialua Agricultural Company, Ltd., and names both Lucy and her husband, Antone Joseph (Antone) as "former owners." However, that record does not indicate that Lucy was named as a party in that case, although her interest was on record in the Bureau of Conveyances at the time the action was filed,[9] nor does it reveal that she was ever personally served with summons,[10] or made an appearance. Lucy's interest is discussed later in this opinion. Antone was named as a defendant, was represented by counsel, and filed an answer.[11]

"The proper and necessary parties to a judicial partition include all who are desired to be bound by the decree in the proceeding." 4A Powell on Real Property, ¶ 611 (1982).

We are aware of no rule of law by which one can be deprived of his title in land by a judgment rendered in a cause to which he was not a party[.]

---

[9]*See* note 14, *infra.*

[10]The record in Equity No. 2989 indicates that notice of the action was published in the Honolulu Advertiser and posted on the premises of Waimea Valley. However, since Lucy's interest was a matter of public record, plaintiff in Equity No. 2989 was required to name her as a party.

[11]According to the complaint in Equity No. 2989, title to the ahupuaa of Waimea was vested in Kaeliwai by Royal Patent Grant 880. Subsequently, Kaeliwai granted an undivided 1/2 of the ahupuaa in equal shares to a hui of 49 individuals, including himself. Each share was for an undivided 1/49th of the undivided 1/2. Later, Kaeliwai conveyed the remaining undivided 1/2, together with his hui share of 1/49th of 1/2 to Paalua. The various interests thereafter devolved by law or conveyance to a large number of people. In his answer in Equity No. 2989, Antone claimed to own a 1/12th interest in hui share 14 issued to Kauki, and a 1/12th interest in hui share 14 issued to Kaualii, which he acquired by deed from Ewa Kamaki Arcia, who was also named as a respondent in the petition. It appears that Waimea Land Co. named as respondents in Equity No. 2989 those persons who had been named in Land Court Application No. 561 as owning undivided interests in the ahupuaa of Waimea, although not named as parties to the application. Lucy acquired her interest after Land Court Application No. 561 was filed and, therefore, was not named therein.

*Moranho v. De Aguiar,* 25 Haw. 267, 269 (1919).

Waimea contends that Antone appeared on behalf of Lucy, arguing that Antone's statement under oath in the course of Equity No. 2989 regarding the value of the improvements on Lot 1-E and cancellation of the agreement of sale between Lucy and Timothy indicates that he appeared for his wife. The argument is without merit. The record does not contain any indication that Lucy in fact authorized Antone to appear or act for her.

The record in Equity No. 2989 shows that Lucy's interest in the property was not extinguished in that action and was not conveyed by the commissioner's deed. *Id.; Elliott v. Jerman,* 116 N.E.2d 50 (Ohio 1953). The fact that the commissioner's deed in Equity No. 2989 recites that the interest of Lucy Antone Joseph was being conveyed along with the interests of the former owners is of no consequence. The decree in Equity No. 2989 does not mention Lucy and on the record she received none of the proceeds.[12]

## II.

Waimea's argument that it acquired title to Lucy's undivided interest by adverse possession is without merit. In light of the fact that Waimea and its predecessors in title were tenants in common with Lucy or her heirs, Waimea's claim to ownership of Lucy's interest on that ground cannot be sustained.

Possession by one cotenant is presumed not to be adverse to his cotenants but in common with them. *In re Keamo,* 3 Haw. App. 360, 369, 650 P.2d 1365, 1372 (1982). In order to overcome that presumption, the cotenant claiming title by adverse possession must show "(1) a clear intent to claim adversely; (2) adverse possession in fact; and (3) knowledge or notice of the hostile holding brought home to the cotenant or cotenants out of possession." *Id.* 3 Haw. App. at 367-68, 650 P.2d at 1371 (quoting *Yin v. Midkiff,* 52 Haw. 537, 481 P.2d 109 (1971)).

The evidence shows that Waimea has met the first two requirements

---

[12]The decree in Equity No. 2989 awards part of the proceeds of sale ($260.35) to Antone as his share of the proceeds of sale and as reimbursement for the improvements on Lot 1-E.

of *Keamo*. Also, the evidence is that Antone had notice of Equity No. 2989 and of Waialua Agricultural Company's intent to claim title to all of the ahupuaa of Waimea. However, we do not, on this record or the record in Equity No. 2989, know anything about Lucy or her heirs. We do not know if Antone and Lucy were still married during the Equity No. 2989 proceedings, whether Lucy was alive then, when she died, or where she was living during the period after the commencement of Equity No. 2989. Those facts and others all bear on the question whether Lucy or her heirs can be charged with knowledge or notice of Waimea's hostile holding. Although on remand Waimea may be able to establish such facts as may satisfy *Keamo's* third requirement, the state of the record, here, makes a finding to that effect pure conjucture.

Moreover, Waimea's claim of title to Lucy's interest by adverse possession in this action suffers from the same defect as the petition in Equity No. 2989 — neither Lucy nor her heirs have been made parties to this proceeding.[13] *Moranho v. De Aguiar, supra.*

### III.

The question, then, is whether Waimea was entitled to possession and the ouster of Francis? Quite clearly, Waimea is the owner of an undivided interest in the ahupuaa. As such, it has the right to bring an action to recover possession from an outsider, a stranger to the title. 4A Powell, *supra*, ¶¶ 603, 606; 86 C.J.S. *Tenancy in Common* § 138(a) (1954).

> When a single cotenant suing alone brings ejectment or other action to recover possession of land, against an outside wrongdoer, he is, in most jurisdictions, able to secure a result applicable to the whole of the common asset, and the recovery so made inures to the benefit of the other cotenants.

4A Powell, *supra*, ¶ 606.

However, if Francis has title to all or a part of Lucy's undivided interest, either under the agreement of sale or through some other means, then he is a tenant-in-common with Waimea and is entitled to

---

[13]*See* part IV of this opinion regarding whether Francis may establish a claim of title as an heir of Lucy.

possession of the entire ahupuaa, including Lot 1-E, in common with Waimea. *Moranho v. De Aguiar,* 25 Haw. at 270. We address first Francis' claim of title under the agreement. Other possible claims are discussed in part IV, *supra.*

A.

As stated, Francis claims title to an undivided 1 ⁄ 98th interest in the ahupuaa under the agreement of sale from Lucy.[14] The agreement of sale apparently remained in Lucy's possession, and was not recorded until May 5, 1981,[15] after it had been found among Lucy's belongings and delivered to Aileen Brown (Aileen),[16] Timothy's wife. The consideration recited in the agreement of sale was $1,500, Timothy paying $200 down and agreeing to pay the balance in monthly installments of not less than $25, together with interest at 7% per annum, payable quarterly. Timothy, Aileen, and Lucy died prior to the institution of this action, although the record does not indicate when. Timothy never received a deed from Lucy. On April 3, 1981, Timothy conveyed a 1 ⁄ 98th interest in Royal Patent Grant 880 to Francis by quit-claim deed.

Francis asserts that a genuine issue of material fact exists because of his claim that Timothy paid the agreement of sale in full in 1930, and, therefore, summary judgment should not have been granted.

The evidence of Francis' title in the record are (1) the agreement of sale between Lucy and Timothy, (2) Timothy's affidavit that he paid the agreement of sale in 1930, and (3) Francis' answers to interrogatories and his affidavit that Timothy had informed him, both when Francis was a child and an adult, that Timothy had paid the agreement of sale. On our review of the entire record, Francis fails to convince us that a

---

[14]Lucy's interest was conveyed to her by deed of Eva Kamaki Kahalepauole (Eva) dated May 22, 1925, and recorded on November 9, 1925, in the Bureau of Conveyances in Liber 792 at page 472. Eva conveyed her "interest of the combined shares belonging to Kauki (male) and Kaualii within the land purchasing association of Waimea, Waialua, said Oahu." We do not know if Eva is the same person as Ewa Kamaki Arcia from whom Antone Joseph claimed title in Equity No. 2989, or whether the interests in the deed to Lucy from Eva and in Antone Joseph's answer are the same.

[15]Query: Did Lucy die in 1981?

[16]The record indicates that Aileen was Lucy's cousin.

genuine issue of material fact exists as to the issue of his title under the agreement of sale.

## B.

Summary judgment is properly granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact so that the moving party is entitled to a judgment as a matter of law." Rule 56(c), HRCP. A "court cannot try issues of fact on a Rule 56 motion but only is empowered to determine whether there are issues to be tried." 10 Wright, Miller and Kane, Federal Practice and Procedure: *Civil* § 2712 (1983).

"To determine the existence of a genuine issue, the court must engage in a rather sophisticated and careful inquiry, especially since there is no precise formula for determining when this is the case." 10A Wright, Miller and Kane, *supra* § 2725.

The summary judgment movant may discharge his burden by showing that if the case went to trial there would be no competent evidence to support a judgment for his opponent. "If no evidence could be mustered to sustain the nonmoving party's position, a trial would be useless and the movant therefore is entitled to a judgment as a matter of law." 10A Wright, Miller and Kane, *supra,* § 2727. And if the movant, by uncontroverted affidavits or by using any of the other materials specified in the rule, completely explores and establishes the facts, he may be able to demonstrate the absence of any genuine issue of fact. *Id.*

A summary judgment is analogous to a directed verdict. 6 Moore, *Federal Practice,* § 56.04(2), at 2044 (2d ed.). If the court is satisfied that it has the complete facts and that there is no question of credibility, it may grant a summary judgment. *State v. Midkiff,* 49 Haw. 456, 459, 421 P.2d 550, 553 (1966); *see also Tagawa v. Maui Publishing Co.,* 49 Haw. 675, 427 P.2d 79 (1967).

## C.

In determining the question of a genuine issue of fact the first question to be addressed is whether the affidavits contain information which would be admissible at trial. 10A Wright, Miller and Kane, *supra,* § 2738. "Supporting and opposing affidavits shall be made on personal

knowledge, [and] shall set forth facts as would be admissible in evidence[.]" Rule 56(e), HRCP. Those requirements are mandatory. 10A Wright, Miller and Kane, *supra.*

In examining the evidence of payment relied upon by Francis, we are struck with the fact that the only evidence that he would be able to produce at trial is hearsay testimony of Timothy's assertions.

Timothy is now dead and the question is whether his affidavit or any other statements made by him would be admissible at trial. That question is determined by the Hawaii Rules of Evidence (HRE) (1981). *Myers v. Cohen,* 67 Haw. 389, 688 P.2d 1145 (1984).[17] 10A Wright, Miller and Kane, *supra.* Since Francis is trying to prove the truth of those statements, they are clearly hearsay, Rule 801, HRE, and inadmissible except under the exceptions in HRE or other rules prescribed by the supreme court or by statute. Rule 802, HRE. *See Kekua v. Kaiser Foundation Hospital,* 61 Haw. 208, 601 P.2d 364 (1979).

The Rules of Evidence provide only one possible exception to the hearsay rule that may be applicable in this case, Rule 804(b)(6),[18] which provides in pertinent part:

> (b) Hearsay exceptions.   The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

*   *   *

> (6) Other exceptions.   A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through rea-

---

[17] In *Meyers v. Cohen,* 67 Haw. 389, 688 P.2d 1145 (1984), the supreme court indicated that admissibility of evidence is "frequently a matter within the discretion of the trial judge," and that the test to be applied to evidence properly submitted on a motion for summary judgment is whether, under the rules of evidence, it may be admissible at trial. *Id.* 67 Haw. at ___, 688 P.2d at 1150. There, the court tested the evidence against the Hawaii Rules of Evidence because the trial court had not done so. Here, also, the trial court did not rule on the admissibility of the evidence presented. Moreover, implicit in the trial court's holding here is the finding that Francis' evidence would be inadmissible.

[18] Rule 803(b)(24) is the identical counterpart to 804(b)(6) and is applicable where the availability of the declarant is immaterial. The two rules are similar to Rule 803(24) of the Federal Rules of Evidence.

sonable efforts, and (B) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

The exception was really presaged by *Hew v. Aruda,* 51 Haw. 451, 462 P.2d 476 (1969), where the supreme court said:

> While the great vice of hearsay statements is the potential lack of trustworthiness, this single liability is not enough to justify the exclusion of a decedent's statement when accuracy can be shown in other ways. By focusing the inquiry on the circumstances surrounding the declarant's position when he made the statement, a determination of trustworthiness can be made by the trial judge. Certain safeguards must be met in order to guarantee that trustworthiness, however. We hold that a statement is not excluded by the hearsay rule if the declarant is unavailable as a witness and the court finds that the statement was made in good faith, upon the personal knowledge of the declarant, and while his recollection was clear, unless other circumstances were present indicating a clear lack of trustworthiness. This very reasonable limitation of trustworthiness is necessary since the party against whom the statement is offered has no opportunity to test the hearsay by cross-examination. [Footnote omitted.]

*Id.* 51 Haw. at 456-57, 462 P.2d at 480.

> Each case [of proferred hearsay evidence] must be judged on its own unique facts and the issue of admissibility should be determined in light of the basic purposes of the rules of evidence, which, according to Rule 102, are to facilitate truth ascertainment in order fairly to resolve controversies brought to the courts for adjudication.

11 Moore's Federal Practice, § 803(24)[7] (1984).

Examining the circumstances surrounding Timothy's assertions, *Hew v. Aruda, supra,* we are not convinced of their trustworthiness. Although he dealt with representatives of the various owners directly, he, himself, never made any assertions to them of his ownership.[19] His assertions of ownership stand merely as self-serving statements to

---

[19]Although Francis' answers to interrogatories state that such claims were made in 1950 and in the summer and September of 1982, it appears that those were made by Francis, and that the latter two were made after the dispute began to ripen. All were based on Timothy's hearsay assertions to Francis.

members of his family, and, in the light of Timothy's long-continuing conduct, have no circumstantial indications of trustworthiness. Francis' affidavit, not being in compliance with Rule 56(e), must be disregarded, *Cahill v. Hawaiian Paradise Park Corp.,* 56 Haw. 522, 543 P.2d 1356 (1975), and it does not appear that Francis will be able to produce any other competent evidence that the agreement of sale was paid.

> Applicable here is the statement in 6 Moore, *Federal Practice,* § 56.15(3), at 2343-44 (2d ed.), that an opposing party who cannot show that countervailing evidence will be available at the trial, is not entitled to denial of the motion for summary judgment 'on the basis of a hope that such evidence will develop at trial.'

*State v. Midkiff,* 49 Haw. 456, 459, 421 P.2d 550, 554 (1966).

Moreover, there is case law directly on point holding that such hearsay evidence is inadmissible in this case.

*Makekau v. Kane,* 20 Haw. 203 (1910), was an action of ejectment in which the lower court had ruled that a witness' testimony that the defendant stated that he owned the disputed land was inadmissible. The supreme court held that the rule that "declarations made by a claimant, not to the true owner but to a stranger, to the effect that he owned or claimed the land in dispute are admissible, not for the purpose of proving the truth of those assertions but for the purpose of giving character to the possession and of showing that it was hostile, . . . is subject to two limitations." *Id.* at 208. One of those limitations, pertinent here, is "that a mere narration of past events is but hearsay and not competent to be proven." *Id.* Accordingly, the supreme court in *Makekau* affirmed the lower court's ruling, noting that the statement was not offered for the limited purpose of giving character to the possession.

In *O.R. & L. Co. v. Kaili,* 22 Haw. 673 (1915), another ejectment action, the supreme court stated:

> It is settled in this Territory, in accordance with the rule in most of the States, that the declarations of a person in possession of land as to the nature of his claim go to characterize his possession, are part of the *res gestae,* and tend to prove the hostility of claim necessary to an adverse holding. *Carter v. Lulia,* 16 Haw. 630; *Makekau v. Kane,* 20 Haw. 203. But it is also well settled that declarations which are but narratives of past occurrences are not admissible as part of the *res gestae.* 16 Cyc. 1258, 1 Greenleaf on Evidence, Sec. 110. . . . Declarations which are but statements as to the source of claim or manner of acquiring possession of land are narrations of past trans-

actions and are not to be considered as merely characterizing the possession, and therefore, not of the *res gestae.*
*Id.* at 675.

Here, Francis is attempting to show his source of title. He is not merely trying to characterize his possession. Consequently, Timothy's statements are inadmissible hearsay.

D.

Arrayed against Francis' affidavit is the following uncontroverted evidence.

On the record in Equity No. 2989, Waimea clearly owns an undivided interest in the ahupuaa of Waimea. Ever since the property was bought by Waialua Agricultural Co., Timothy and his family paid rent for occupancy of Lot 1-E under oral agreements until July 1, 1952. On that date, a written lease was executed between Helemano Land Co. and Timothy Augustus Brown and Carl Kaleonani Brown.[20] A subsequent rental agreement was executed between Castle & Cooke, Inc. and T.A. Brown[21] on January 31, 1968. Further rental agreements were executed by Waimea as follows:

1 - July 16, 1979, with Timothy A.K. Brown, Aileen E. Brown and Francis K. Brown;
2 - September 1, 1980, with Timothy A. and Aileen E. Brown;
3 - February 13, 1981, with Timothy A., Aileen E., and Francis K. Brown (as guarantor).

On April 10, 1981, and June 22, 1981, T.A. Brown and Francis Brown sought and were granted permission by Waimea to make repairs and additions to the buildings on the premises. The last rental agreement expired on March 31, 1982.

As stated above, Francis admits throughout these proceedings that Timothy, and then he, rented the premises from Waimea and its predecessors in title. In his answer to the complaint, Francis admits that Waimea "and its predecessors entered into rental agreements with Timothy Brown, that said rental agreements speak for themselves[.]"

---

[20] We do not know who Carl was.

[21] T.A. Brown was Timothy.

Francis argues, however, that the rental agreements were really agreements for exclusive occupancy based on Timothy's claim of title to an undivided 1/98th interest, and recognition of the ownership of Waimea and its predecessors in title of the other 97/98ths interest. He contends now that the rent was paid only for Waimea's concurrence in the exclusive occupancy. This theory is viable only if Francis has title to an undivided interest in Waimea Valley. We hold he does not.

> The showing of a 'genuine issue for trial' is predicated upon the existence of a legal theory which remains viable under the asserted versions of the facts, and which would entitle the party opposing the motion (assuming his version to be true) to a judgment as a matter of law. *McGuire v. Columbia Broadcasting System,* 399 F.2d 902, 905 (9th Cir. 1968).

*General Communication Engineering v. Motorola Communication and Electronics, Inc.,* 421 F. Supp. 274, 279 (D. Calif. 1976).

> Although on a motion for summary judgment the evidence is viewed in a light most favorable to the non-moving party, when the evidence is not susceptible to the interpretation which the non-moving party seeks to give it, the motion for summary judgment should be granted. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 259, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *see generally,* Wright & Miller, Federal Practice and Procedure: Civil, § 2727 at 532-537 (1973).

*Morrison v. United States,* 449 F. Supp. 654, 663 (D. Ohio 1977).

> Legal argument cannot by itself create a factual dispute sufficient to defeat a summary judgment motion where no such dispute otherwise exists, and a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation. *British Airways Board v. The Boeing Company,* 585 F.2d 946, 952 (9th Cir. 1978).

The evidence in this case is simply not reasonably susceptible to Francis' claim of title by reason of Timothy's payment of the agreement of sale.

IV.

Additionally, the facts and circumstances of this case convince us that, under the doctrine of equitable estoppel, Francis should be estopped from taking a position at trial totally inconsistent with Timo-

thy's actions, and his, of more than 50 years standing, and Francis may not assert title to Lucy's interest through the agreement of sale or otherwise.

"The doctrine of equitable estoppel is firmly established as part of our law as applying to individuals and their privies." *Filipo v. Chang,* 62 Haw. 626, 633, 618 P.2d 295, 299 (1980).

> The rule of law is clear that where one by his words, or conduct, wilfully causes another to believe the existence of a certain state of things, and induced him to act on that belief so as to alter his previous position, the former is precluded from averring against the latter a different state of things, as existing at the same time.

*Anderson v. Anderson,* 59 Haw. 575, 587-88, 585 P.2d 938, 946 (1978) (quoting *Molokai Ranch, Ltd. v. Morris,* 36 Haw. 219, 223 (1942)). "'[O]ne cannot blow both hot and cold.' *Yuen v. London Guarantee & Accident Co.,* 40 Haw. at 230 (quoting *McDanels v. General Insurance Co.,* 1 Cal. App. 2d 454, 459, 36 P.2d 829, 832 (1934))." *University of Hawaii Professional Assembly ex rel. Daeufer v. University of Hawaii,* 66 Haw. 214, 221, 659 P.2d 720, 726 (1983).

The doctrine of equitable estoppel includes both promissory estoppel and estoppel *in pais* (estoppel by conduct). *Fred v. Pacific Indemnity Co.,* 53 Haw. 384, 494 P.2d 783 (1972).

> To constitute estoppel *in pais* the party against whom it is sought to be enforced must have made some representation the effect of which would be to influence the conduct of the one seeking to enforce the estoppel and induce him to change his position so as to materially injure him if the party making the representation is allowed to deny its truth.

*Id.* at 388, 494 P.2d at 786 (quoting *Silverhorn v. Pacific Mutual Life Ins. Co.,* 24 Haw. 366, 372 (1918)).

One who invokes the doctrine of "equitable estoppel must show that he or she has detrimentally relied on the representation or conduct of the person sought to be estopped, and that such reliance was reasonable." *Strouss v. Simmons,* 66 Haw. 32, 43, 657 P.2d 1004, 1012 (1982); *Waugh v. University of Hawaii,* 63 Haw. 117, 129-30, 621 P.2d 957, 967 (1980). In *Filipo v. Chang, supra,* however, the supreme court held "that, under the facts of that case, the usual reliance element of equitable estoppel could be dispensed with in order to prevent manifest injustice." *Waugh v. University of Hawaii,* 63 Haw. at 130, 621 P.2d at 967.

In the final analysis, equitable estoppel is dependent upon "a close

analysis of individual fact situations for its application. Further, courts seem to implement interest balancing in their discussion of whether manifest injustice would result." *Filipo v. Chang,* 62 Haw. at 634, 618 P.2d at 300.

What representation was made by Timothy; Aileen and Francis? Their conduct in entering into the numerous rental agreements was a representation that they did not have title, and a recognition of the title of Waimea and its predecessors. All of their actions indicated their acceptance of their status as tenants, not owners of an undivided interest. In our view it matters not that Lucy's interest in the property had not been extinguished in the partition suit. The claim sought to be interposed now is Francis' claim of title to Lucy's interest, arising from the agreement of sale. No such claim had been made known before 1950,[22] and that claim was made on hearsay. Waialua Agricultural Co. and its successors in interest were, undoubtedly, mistaken in their belief that they had acquired clear title to the valley. However, such a mistaken belief does not, in our opinion, destroy the reasonableness of their reliance on the conduct of Timothy and Aileen and their descendents as indicating no claim to title.

It may be argued with some degree of cogency that, since Waimea and its predecessors thought they had complete title, there was no reliance on Timothy's conduct in not interposing an adverse claim. But the argument ignores the fact that Timothy's conduct buttressed Waimea's mistaken belief that they held complete title. We think it can be safely assumed that Waimea Land Co., petitioner in Equity No. 2989, having evinced its interest in acquiring sole ownership of the valley, would have taken further steps to perfect its title if either Lucy or Timothy had indicated they owned or claimed title to an undivided interest.

In 1982, Francis suddenly claims that Timothy paid the agreement of sale in 1930. But the record in the partition suit shows that notice of the proceeding was posted on the premises in the valley and that Timothy and Aileen were living there when the suit was instituted. It is inconceivable that they could not have known of the proceeding and its threat to their title, notwithstanding the fact that neither they nor Lucy were

---

[22]*See* note 19, *supra.*

named as parties. Nevertheless they made no claim of title to Lucy's interest, but instead entered into the rental agreements with corporations they recognized as owners of the property.

Under the facts of this case, the rule of *Filipo v. Chang* is applicable, and the balance is tilted in Waimea's favor. We hold that a manifest injustice would be visited upon Waimea if Francis were to be allowed to interpose his claim of title in view of the fifty years of rental agreements, and a failure to obtain a deed from Lucy upon the claimed payment of the agreement of sale. Any other conclusion would work an extreme hardship on Waimea in meeting any proof that could be offered by Francis. All the principals to the agreement of sale are dead. The only evidence of payment would be oral statements of Timothy to Francis. There is no way to refute such evidence except by proof of Timothy's and Francis' conduct.

Francis' counsel argues that Timothy was not sophisticated in the nuances of property law and therefore his failure to assert his claim should not be held against him. At the same time, however, as noted above, he argues that the rental agreements were really agreements for exclusive occupancy of Lot 1-E, and that the rent was paid only for Waimea's permission to occupy its 97/98ths interest. Such an interpretation of the facts of this case would require us to ascribe to Timothy even more sophistication in the law than would be required for him to merely assert title openly. By their mere iteration the arguments illuminate their lack of merit.

Finally, we note that, although both parties addressed only Francis' claim of ownership under the agreement of sale, the record indicates that Francis is possibly an heir-at-law of Lucy.[23] The judgment below effectively forecloses Francis from claiming title against Waimea on that ground. We hold the trial court was correct. The same considerations that equitably estop Francis from asserting title under the agreement prevent him from asserting title as Lucy's heir. Additionally, we are of the opinion that Francis cannot assert title under adverse possession against Lucy's heirs, since his and Timothy's possession was not with the intent of claiming title.

---

[23]The record also shows, however, that Lucy was survived by a daughter who was apparently still alive in 1981. Thus, while the record indicates the possibility it is doubtful that Francis can prove he is an heir of Lucy.

## CONCLUSION

The judgment of the court that Francis and the other defendants have no title to the property and that Waimea was entitled to possession of Lot 1-E as against them was correct and is affirmed.

The judgment that Waimea is the sole owner of Lot 1-E is vacated.

This matter is remanded to the circuit court with instructions to afford Waimea the opportunity to join Lucy's estate or her heirs in this matter and proceed with a quiet title action, if it desires to do so.

*Hayden F. Burgess* (*Paul Saccoccio* with him on the opening brief) for defendant-appellant Francis K. Brown.

*Cuyler Shaw* (*Ashford & Wriston* of counsel) for plaintiff-appellee Waimea Falls Park, Inc.