NOT FOR PUBLICATION  IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-19-0000505**
**04-JUN-2024**
**08:01 AM**
**Dkt. 326 MO**

NOS. CAAP-19-0000505 and CAAP-19-0000576

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

### CAAP-19-0000505

IVY H. ANDRADE, Personal Representative of the Estate of CARLOS LAWRENCE ANDRADE, Deceased, Plaintiff-Appellee/Cross-Appellee,
v.
KUOLULU (k); MANUEL RAPOSO A.K.A. MANUEL RAPOZO; MARIA ALVINA JOSE A.K.A. MARIA ALVINA RAPOZO; MANUEL JOSE, SR.; ALBERT J. JOSE; WAYNE KENNETH JOSE; MAY CLARA JOSE; FRANCIS DURFEE; DEBRA DIANNE JOYCE; MICHELLE WOOD; TRACY ANN WALDRON; MARY F. WEBB; RAYMOND EDWARD JOSE; LYDIA S. JOSE; DOROTHY TAVARES A.K.A. DOROTHY JOSE; JACINTHO "JACK" JOSE; ADAM THOMAS JOSE; NORMA J. WAGNER; THOMAS ADAM JOSE; JUDY JOSE; EVA "EVELYN" CHANG A.K.A. MARY EVA "EVELYN" CHANG; JANICE PANG HACKBARTH A.K.A. JANICE PANG A.K.A. JANICE CHANG; GORDON N. CHANG; GAYLE N. MORIHARA; REGINALD DERRICK NEWBERRY A.K.A. REGINALD DERRICK CHANG; MARGARETTE "PEGGY" KALEIWAHEA; WILLIAM E. KALEIWAHEA, JR.; WAYNE A. KALEIWAHEA; PHILLIS GRADO; ANTOINETTE K. JOHNSON; JACQUELINE "JACKIE" KALEIWAHEA; KIM KALEWAHEA; ALICE G. MOORE; HERBERT G. MOORE; AMELIA "EMILY" J. ABREN A.K.A. AMELIA SILVA; JOHN "JACK" JOSE; BYRON JOHNSON JOSE; JACQUELINE KNOBBE A.K.A. JACQUELINE BLOCK; ROBERT JOHN KNOBBE; ALFRED "FRED" JOSE; JAMES RANDOLPH JOSE; ALFRED JOSE, JR.; ANGELINE CORDEIRO A.K.A. ANGELINA CORDEIRO; SISTER JEANNE CORDEIRO A.K.A. GENEVIEVE CORDEIRO; HERBERT CORDEIRO; IRENE TERESA CORDEIRO; DENIS G. CORDEIRO; JOHN H. CORDEIRO; CHARLOTTE WEEKLEY; MICHELLE L. WEEKLEY; CHARDRA LEAH BRYANT; CHERYL BETH BESHORE A.K.A. CHERYL BETH WEEKLEY; GEROLD BESHORE; ROBERT CORDEIRO; NATALIE CORDEIRO; ROXANE MARIE MILLER; LORY ANN QUIPOTLA; KENNETH N. CORDEIRO A.K.A. NORMAN KENNETH CORDEIRO; JOHN P. CORDEIRO; LUIS DRAPER; NICOLE KELSON; HALEY CARTER; DEBRA VITTORE; SANDRA LUANA CORDEIRO; ALEXANDER JOSE; JR.; BETTY JOSE LONG A.K.A. JACQUELINE "PEGGY" LONG; PAUL V. LONG; DORIS HEDGEPETH LONG; CLARENCE R. JENKINS; JOHN H. JENKINS; HUBERT LEVI JENKINS; EDWARD EARL JENKINS, JR.; BETTY ANN BASS A.K.A. BETTY ANN PINERO A.K.A. BETTY ANN BALAI A.K.A. BETTY ANN LONG; CAMERON PINERO; PAUL LEWIS PINERO; SHARNELL KOGER; PAUL LEWIS PINERO, JR.; PATRICIA PINERO; MARGARET JANE TAYLOR; JODIE

PEDRO; BRIAN TAYLOR; ROBERT A. TAYLOR, JR.; PAKA CHARLES TAYLOR; KEHAU CHARLES TAYLOR; PATRICIA JEAN FERREIRA A.K.A. PATRICIA JEAN JOSE; CHARLES FERREIRA; SHARON MARTINEZ; PAMELA UMIAMAKA; DEANN FERREIRA; WILLIAM STEPHEN JOSE; GEORGINA "JEAN" WOODS; BARBARA JEAN MYERS; SHIRLEY ANN MYERS; GEORGE JOSE, SR.; GEORGE JOSE, JR.; WAYNE JOSE, son of George Jose, Jr.; ROSE COBO A.K.A. ROSE JOSE; JOYCE COFFIN; MARIA PEARL; RANDY JOSE; DAVID JOSE; THOMAS JOSE, son of George Jose Jr.; ROSELYN DUNCAN A.K.A. ROSLIN JOSE; JONI M. FIELD; RANDOLPH MATTHEW FIELD, JR.; EDWARD CELESTINE JOSE; DONALD R. JOSE; SHARON MARIE JOSE; EDWARD JOSE, JR.; DOROTHY JOSE; DEREK JOSE; DOUGLAS JOSE; DEBORA ANDERSON A.K.A. DEBORA JOSE; DORIE BAKER; ELIZABETH SANTIAGO A.K.A. ELIZABETH JOSE; CHARLES L. JOSE; EDWARD JOSE; DAWN BASUIL; THERESA FLORES; DELORES C. SWAYNE A.K.A. CATHERINE D. JOSE; DIANA SHIRLEY BRITT A.K.A. DIANA JOSE; LISA ANN KYLE A.K.A. LISA ANN BROWN A.K.A. LISA ANN BRITT; BRYANT D. BRITT; CRYSTAL MARIA COSTILLA BRITT A.K.A. CHRYSTAL COLICHER; SHELBY M. WISE A.K.A. SHELBY M. BRITT; BRYANNE DIANA BELANGER; HELEN BLACKWELL A.K.A. MARTHA HELEN JOSE; ANTHONY "TONY" JOSE; BARBARA JEAN THOMPSON; CYNTHIA LOUISE CAMACHO; KENELM K. CHANG; LILLIAN CHANG; NALINE M. LEE; FRANCISCO "FRANK" JORDAN; MANUEL JORDAN, JR.; JOSEPH "BILL" JORDAN; ALICE S. JORDAN; WALTER SIMAO, SR.; ELLEN SIMAO; ENID SIMAO; LEE DOWNS; EARL SIMAO; DEANNA CARRERA; RICHARD SIMAO; HAROLD W. SIMAO; ANGELINA "JEAN" MILLS; ALLAN DOUGLAS BEERMAN; SUSAN RENE WARE; JOSEPH A. SILVA; MARGARET F. SILVA; PETER J. SILVA, SR.; JOSEPH A. SILVA, JR.; MARGIE L. GALINDO; CAROL MARIE WATERS; ALFRED SILVA GANANSA; ANTHONY SILVA; JOYCE A. SILVA; NICHOLAS G. SILVA; BEATRICE SILVA; MARGARET J. CAMERON; PATRICIA FRANCES PILA; ROBERT PILA, JR.; DIANE HAYASHI; ROBERT PILA III; CAMERON PILA; HELEN DePERRIERA; ERNEST DePERRIERA; JR.; STEPHEN D. PERRIERA, SR.; STEPHEN D. PERRIERA, JR.; JESSE PERRIERA; SCOTT ALAN PERRIERA; DEAN A. PERRIERA; TABITHA M. PERRIERA; AMBER LEIGH MURPHY; TIFFANY J. PERRIERA; NICHOLAS WILLIAM PERRIERA; ADAM P. PERRIERA; JONATHAN M. PERRIERA; AMANDA SKAWSKI; DANNY PERRIERA; BARBARA JEAN BROWN; ADAM RAPOZO JORDAN; HELEN JORDAN; ROBERT JORDAN; LAWRENCE JORDAN; EVA JANDA A.K.A. EVE JONDA; LINDA J. GILL; IDA J. MARIANO; JOSEPH "SONNY" MARIANO; HILDEGARD C. MARIANO; THOMAS JOSEPH MARIANO; JOHN CLARK MARIANO; JEANNETTE CHAVEZ; BEATRICE CAMPBELL; PATRICK MARIANO; JOSEPH MARIANO III; WALTRAUD "DOLLY" HEITZ; HANS JURGEN; SANDRA NOLL; RODNEY E. MARIANO; DAVID C. MARIANO; MICHELLE N. GARCIA; GERALD "JEROME" MARIANO; BEVERLY KALIKO MARIANO; MARJORY M. STARMEN A.K.A. MARGIE STARMAN; MICHAEL DUARTE; MARK DUARTE; DEBRA SHOFFIT; BETTY ANN LEE; JEANETTE JOHNSON; MANUEL RAPOZO, JR.; GEORGINA "JEANNIE" ISABELLA REAY; ARTHUR MARION REAY; CAROLINE ISABELL RATHBURN; MARVIN ARTHUR RATHBURN; NORMA RATHBURN; MARVIN S. RATHBURN; VANESSA MARIE RATHBURN; LEVI RATHBURN; KENNETH RATHBURN; THOMAS R. RATHBURN; RENEE RATHBURN; DAVID A. RATHBURN; RICHARD A. RATHBURN; RENELLEN HENRY A.K.A. RENELLEN BEGBIE; RAYMOND A. REAY; OLIVIA McMAHEL; ANN DONNA JACOBI; BRUCE T. JACOBI; NOLA SUSAN SMITH; CLIFFORD A. McMAHEL; DEAN McMAHEL; TERRY LYNN HERMAN-SANTOS A.K.A. TERRY LYNN HERMANN; TIMOTHY McMAHEL; JOHN RAPOZO; JACKIE DIAS A.K.A. JOSEPHINE RAPOZO; MERLIN NORTON RAPOZO; ROBERT RAPOZO; DUANE RAPOZO; MARIAN J. TAVARES; LEONARD RAPOZO; RONALD

RAPOZO; WILLIAM "WILLIE" RAPOZO; VIOLET RAPOZO; CHARLOTTE L.
CUMMINGS; ANDREW CUMMINGS; ANGELINE SOUZA A.K.A. ANGELINA SOUZA;
MANUEL RAYMOND SOUZA; LYDIA EDITH SOUZA; BEVERLY JUNE BIGONGIARI;
NELLO BIGONGIARI; JOSEPH SOUZA; GABRIEL SOUZA; JAMES BENJAMIN
"BENNY" SOUZA; FRANK RAPOZO, SR.; JOSEPH RAPOZO; EDWARD RAPOZO;
RAYMOND RAPOZO; FRANK (FRANKIE) RAPOZO, JR.; MARIE SARDINA RAPOZO
A.K.A. MARY "GIRLIE" RAPOZO; JOSEPH SARDINA RAPOZO; JOSEPH RONALD
RAPOZO A.K.A. RONALD RAPOZO; GORDON RAPOZO; GERALD RAPOZO A.K.A.
JERRY RAPOZO; MARY RAPOZO; GILBERT RAPOZO; RAYMOND R. RAPOZO;
RUSSELL RAPOZO; NICHOLAS RAPOZO; ELLEN RAPOZO; STEPHEN RAPOZO;
MERVIN RAPOZO; MADELINE YAMAGUCHI A.K.A. MADELINE RAPOZO; DOREEN
RITA A.K.A. DOREEN RAPOZO; ANTONE RAPOZO; MARY RAPOZO A.K.A. MARY
SILVA; REGINALD JOSEPH SILVA; MERVIN "STAN" SILVA; KATHLEEN
KOERTE; KATHERINE SILVA; ANTONE RAPOZO, JR.; LILLIAN V. RAPOZO;
OLIVIA EVANS; EUGENE EVANS, SR.; MARTIN "MARK" RAPOZO; GEORGE
VICTOR RAPOZO; MARK RAPOZO; GERALDINE RAPOZO; MARTIN RAPOZO;
GERALD RAPOZO; KAREN RAPOZO; ALFRED R. RAPOZO; PATRICIA RAPOZO;
BARRY RAPHAEL RAPOZO; LARRY STEPHEN RAPOZO; PEGGY PONCINI-RAPOZO;
RUSSELL RAPOZO TRUSTEE OF THE EDWARD S. RAPOZO TRUST; PILAA
KULEANA LLC; DEPARTMENT OF TAXATION, STATE OF HAWAII; NORTHSHORE
KALO LLC, a Hawaii Limited Liability Company; their respective
heirs and assigns, Defendants-Appellees/Cross-Appellees,
and
WAYNE J. RAPOZO, Proposed Intervenor-Appellant/Cross-Appellee,
and
SHANNON BUCKNER, Defendant-Appellant/Cross-Appellee,
and
MERWIN ANDREW STAPP, JR.; SHARON MARGARET STAPP; JENNIE GUERRERO;
TERI FERREIRA-IGE; EUGENE EVANS, JR.; MATHEW EVANS and SHAMUS
EVANS, Defendants-Appellees/Cross-Appellants,
and
DOE DEFENDANTS 1-200; and ALL WHOM IT MAY CONCERN, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 5CC161000209)


and


**CAAP-19-0000576**
WAYNE RAPOZO and SHANNON BUCKNER, Plaintiffs-Appellants,
v.
IVY H. ANDRADE, Personal Representative of the Estate of
CARLOS LAWRENCE ANDRADE, Deceased, Defendant-Appellee,
and
DOE DEFENDANTS 1-100; DOE CORPORATIONS 1-100;
and DOE ENTITIES 1-100, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 5CC191000044)

MEMORANDUM OPINION
(By: Leonard, Acting Chief Judge, Hiraoka and McCullen, JJ.)

In CAAP-19-0000505, Shannon **Buckner**, Wayne J. **Rapozo**, **Merwin** Andrew Stapp, Jr. and **Sharon** Margaret Stapp (together, the **Stapps**), Jennie **Guerrero**, Terri **Ferreira-Ige**, and Eugene Evans, Jr., Mathew Evans, and Shamus Evans (the **Evanses**) appeal from the Final Judgment entered by the Circuit Court of the Fifth Circuit on July 5, 2019, in 5CC161000209 (the **Partition Action**).[1]

In CAAP-19-0000576, Buckner and Rapozo appeal from the Final Judgment entered by the Circuit Court of the Fifth Circuit on July 22, 2019, in 5CC191000044 (the **Rapozo/Buckner Action**).[2]

For the reasons discussed below, we (1) affirm the Final Judgment in the Partition Action as to Buckner, Guerrero, Ferreira-Ige, the Evanses, and the Stapps; (2) vacate in part the Final Judgment in the Partition Action to the extent it vests sole ownership of the land at issue in Carlos Lawrence **Andrade**[3] and adjudges the value of Rapozo's interest in the Parcels, and remand for further proceedings; (3) direct the circuit court to vacate in part its July 13, 2023 order (the **Escheat Order**) in the Partition Action to the extent it applies to proceeds from the partition sale due to the Stapps or Rapozo; and (4) affirm the Final Judgment in the Rapozo/Buckner Action.

BACKGROUND

Andrade owned an undivided interest in four **Parcels** of kuleana land on Kauaʻi.[4]  On December 30, 2016, he filed the Partition Action against 308 named defendants, each of whom also

---

[1]     The Honorable Kathleen N.A. Watanabe presided.

[2]     The Honorable Randal G.B. Valenciano presided.

[3]     Andrade died during the pendency of these appeals.  Ivy H. Andrade, personal representative of Andrade's estate, was substituted for Andrade in both appeals.

[4]     "Kuleana land" means "land granted to native tenants pursuant to L 1850, p. 202 . . . as originally enacted and as amended."  Hawaii Revised Statutes (**HRS**) § 669-2 (2016).

owned undivided interests in the Parcels.[5]  Rapozo wasn't one of them, because he didn't acquire his interest in the Parcels until after Andrade filed the complaint.  Rapozo moved to intervene after acquiring his interest in the Parcels from the Stapps.  The circuit court denied intervention.

Andrade moved for summary judgment to quiet title to, and partition, the Parcels.  The circuit court granted the motion, apportioned the parties' fractional interests in the Parcels, ordered a partition by sale, and appointed a **Commissioner** to sell the Parcels by public auction.  The Commissioner conducted the auction on March 22, 2019.  He filed a report on April 2, 2019.  Andrade moved to confirm the sale.  The circuit court reopened bidding, confirmed sale of the Parcels to Andrade for $2.145 million, apportioned the net sale proceeds among the defendants, and entered a judgment on July 5, 2019.  Buckner and Rapozo appealed; the Stapps, Guerrero, Ferreira-Ige, and the Evanses cross-appealed.

Meanwhile, Rapozo and Buckner filed the Rapozo/Buckner Action against Andrade on March 20, 2019 (two days before the public auction of the Parcels).  The complaint alleged four counts: (1) an accounting of, and a constructive trust on, rents received from the Parcels; (2) damages for abuse of process; (3) a declaration that the judgment in the Partition Action was void; and (4) a declaration that Hawaii Revised Statutes (**HRS**) Chapter 668 (Partition of Real Estate) was unconstitutional as applied to the Partition Action.  Andrade moved to dismiss.  The circuit court granted the motion and entered a judgment on July 22, 2019.  Buckner and Rapozo appealed.

On August 31, 2020, while these appeals were pending, the Commissioner filed a report in the Partition Action.  The report stated (among other things) that Buckner, Guerrero, Ferreira-Ige, and the Evanses had cashed checks for their shares

---

[5]     Northshore Kalo LLC, originally a plaintiff, was realigned as the 309th defendant.  The complaint also named 200 unknown defendants, some of whom were later identified, who are not parties to these appeals.

of the partition sale proceeds.  The report didn't state when the checks had been cashed.  Three years later, on July 13, 2023, the circuit court entered the Escheat Order.  It ordered that the Commissioner deposit all undistributed proceeds with the court, and that funds remaining unclaimed after one year would escheat under HRS Chapter 523A.  Included in the list of unclaimed funds were checks to "Wayne Rapozo c/o Sharon Margaret Stapp" and to Merwin Stapp.

On October 20, 2023, we ordered supplemental briefs on the legal effect Buckner, Guerrero, Ferreira-Ige, and the Evanses cashing their checks had on their appeals.  After the supplemental briefs were filed, we remanded the Partition Action to the circuit court for fact-finding.  Cf. Wilmington Sav. Fund Soc'y, FSB v. Domingo, Nos. SCWC-18-0000099 and SCWC-18-0000712, 2023 WL 2017392, at *4 n.12 (Haw. Feb. 15, 2023) (mem. op.) (stating "the ICA should have temporarily remanded the case to the circuit court" for fact-finding to determine whether appeal was moot).

On January 17, 2024, the Commissioner reported to the circuit court that "Wayne J. Rapozo has not cashed his check . . . sent care of Sharon Buckner [sic] per the instruction of his attorney."  The circuit court entered findings of fact, conclusions of law, and an order on February 7, 2024.  It found that (a) Buckner cashed the check for her portion of the sale proceeds on October 16, 2019, and a check covering a state tax lien on September 30, 2019; (b) Guerrero cashed her check on October 11, 2019; (c) Ferreira-Ige cashed her check on October 8, 2019; (d) the Evanses cashed their checks on September 16 and October 16, 2019; (e) the Commissioner's August 31, 2020 report was the first documentation of his distribution of checks to the parties; and (f) Andrade did not know that Buckner, Guerrero, Ferreira-Ige, or the Evanses had cashed their checks before he filed his answering brief on April 6, 2020.

**DISCUSSION**

**(1)**  Buckner, Guerrero, Ferreira-Ige, and the Evanses are estopped from challenging the Final Judgment in the Partition Action because they acquiesced in the judgment by cashing the Commissioner's checks for their respective portions of the partition sale proceeds.

> Hawaiʻi recognizes the theory of quasi-estoppel, which is a species of equitable estoppel which has its basis in election, waiver, acquiescence, or even acceptance of benefits and which precludes a party from asserting to another's disadvantage, a right inconsistent with a position previously taken by the party.  Furthermore, unlike equitable estoppel, an estoppel by acquiescence does not require a showing of detrimental reliance or prejudice.
>
> Estoppel by acquiescence does, however, require that the party being charged with estoppel have knowledge of relevant facts. . . . Before one may be charged with knowledge it must appear that he possesses full knowledge of all the material particulars and circumstances and was fully apprised of the effect of the acts ratified and of his legal rights in the matter.

Harrison v. Casa De Emdeko, Inc., 142 Hawaiʻi 218, 232, 418 P.3d 559, 573 (2018) (cleaned up).

The Commissioner reported that Rapozo "has not cashed his check . . . per the instruction of his attorney."  Rapozo's attorney also represents Buckner, Guerrero, Ferreira-Ige, and the Evanses.  This shows that Buckner, Guerrero, Ferreira-Ige, and the Evanses had "full knowledge of all the material particulars and circumstances and [were] fully apprised of the effect of the acts ratified and of [their] legal rights in the matter" when they cashed their checks.  Harrison, 142 Hawaiʻi at 232, 418 P.3d at 573.  There was no urgency for them to do so; the Escheat Order was issued three years later.  We conclude that by cashing their checks, they acquiesced in the judgment.  Andrade cannot be said to have waived this argument, because he did not know Buckner, Guerrero, Ferreira-Ige, and the Evanses had cashed their checks when he filed his answering brief.

Moreover, other exceptions warranting reversal of the Partition Action do not apply.  This is not a foreclosure case in

which the mortgagee's purchase of the foreclosed property "does not free himself from the underlying dispute to which he is a party[.]"  City Bank v. Saje Ventures II, 7 Haw. App. 130, 133, 748 P.2d 812, 814 (1988) (cleaned up).  Andrade owned an interest in the Parcels.  He paid $2.145 million for sole ownership of the Parcels in the partition sale.  More than $2 million has been disbursed; only $131,337.26 remains unclaimed.  Under these circumstances, it would be inequitable to allow Buckner, Guerrero, Ferreira-Ige, and the Evanses to undo the sale.  They are estopped by acquiescence from challenging the judgment in the Partition Action.

We must still address the merits of the Stapps' and Rapozo's appeals from the Partition Action, and Rapozo and Buckner's appeal from the Rapozo/Buckner Action.

**(2)**  The Stapps argue that the circuit court erred by declining to set aside their defaults.  Rapozo argues that the circuit court erred by denying his motion to intervene.  These issues are related because the Stapps conveyed their interests in the Parcels to Rapozo before their defaults were entered.

Andrade filed the Partition Action on December 30, 2016.  He filed a notice of pendency of action (**NOPA**) on January 4, 2017.  The NOPA was recorded in the Bureau of Conveyances on January 6, 2017.  Sharon was served on February 26, 2018.  Merwin was served on February 27, 2018. Merwin conveyed his interest in the Parcels to Rapozo on March 13, 2018.  Sharon conveyed her interest to Rapozo on March 19, 2018.  Rapozo's deed from Merwin was recorded on March 23, 2018.  His deed from Sharon was recorded on April 4, 2018.

The Stapps' defaults were entered on May 7, 2018, after they had conveyed their interests to Rapozo, and after both deeds had been recorded.  On June 20, 2018, Rapozo moved to intervene. Attached to his motion were copies of Merwin's and Sharon's quitclaim deeds.  Andrade opposed the motion.  The circuit court denied Rapozo's motion by order entered on August 22, 2018.  On

September 10, 2018, the Stapps moved to set aside their defaults. The court denied the Stapps' motion to set aside on October 18, 2018. At this point, the 2/1638 interest (according to the Final Judgment) in the Parcels the Stapps conveyed to Rapozo was unrepresented in the proceedings.

**(a)** We review denial of a motion to set aside entry of default for abuse of discretion. Chen v. Mah, 146 Hawai'i 157, 171, 457 P.3d 796, 810 (2020). The Stapps had to show they had a meritorious defense (among other things). BDM, Inc. v. Sageco, Inc., 57 Haw. 73, 77, 549 P.2d 1147, 1150 (1976), abrogated by Chen v. Mah, 146 Hawai'i 157, 457 P.3d 796 (2020).[6] They had no interest in the Parcels when they were defaulted, having conveyed their interests to Rapozo. They had no standing under HRS § 668-1 (2016) (Partition) or HRS § 669-1 (2016) (Quieting Title) to participate in the Partition Action, and no meritorious defense to quieting title or to partition. The circuit court did not abuse its discretion by denying the Stapps' motion to set aside their defaults.

**(b)** Hawai'i Rules of Civil Procedure (**HRCP**) Rule 24(a)(2) governs intervention by right "when the applicant claims an interest relating to the property or transaction which is the subject of the action[.]" We review the denial of intervention by right under the right/wrong standard. Hoopai v. Civ. Serv. Comm'n, 106 Hawai'i 205, 216, 103 P.3d 365, 376 (2004). We consider (1) if the motion was timely; (2) if Rapozo claimed an interest relating to the Parcels; (3) if the disposition of the action would impair or impede Rapozo's ability to protect his interest; and (4) if Rapozo's interest was inadequately represented by the existing defendants. Id.

Rapozo's motion was timely, having been filed three months after he acquired the Stapps' interests in the Parcels.

---

[6] Chen's "new rule" prospectively applies "only to decisions on motions to set aside entry of default . . . after the date [January 30, 2020] of this opinion." 146 Hawai'i at 177, 457 P.3d at 816. The Stapps' defaults are still analyzed under BDM's three part test. 57 Haw. at 77, 549 P.2d at 1150.

Rapozo had an interest in the Parcels.  The disposition of the Partition Action could have impaired that interest.  The circuit court concluded that "Rapozo failed to establish that the representation of his interest in the subject parcels is inadequate[.]"  But "the requirement of inadequacy of representation is satisfied if the applicant shows that representation of its interests *'may be'* inadequate and . . . the burden of making this showing is minimal."  106 Hawaiʻi  at 217, 103 P.3d at 377 (citation omitted).  When Rapozo moved to intervene, no party in the Partition Action represented the interests in the Parcels the Stapps conveyed to Rapozo.  And Rapozo's motion to intervene was consistent with the partition statute.  See HRS § 668-2 (2016) ("[P]laintiff shall join as a party every person having or claiming to have, as far as known to the plaintiff, any legal or equitable right, title, or interest in the property described in the complaint[.]").  Andrade's opposition to Rapozo's motion to intervene was inconsistent with the statute.

Andrade argues, without citing Hawaiʻi authority, that "[t]he law is well settled that a purchaser pendente lite is not entitled to intervene or otherwise be made a party to the ongoing lawsuit."  But in In re Ward, 31 Haw. 781 (Haw. Terr. 1931), Victoria Ward conveyed land to her three daughters after the City filed an eminent domain action to condemn parts of the land.  The supreme court noted that the Ward daughters had "actual notice of the pendency of the condemnation suit" but "[n]o appearance was entered . . . by any of the three daughters and no attempt was made by them to defend in their own names." Id. at 783.  This indicates that the Ward daughters *could* have intervened, even though they "purchased during the pendency of the action" with actual notice that the action was pending. Id. at 783, 785.  So too should Rapozo have been allowed to intervene as of right to protect his interest in the Parcels.

Andrade also argues (and Rapozo does not dispute) that Rapozo violated HRCP Rule 24(c).  The rule required that Rapozo's

motion "be accompanied by a pleading setting forth the claim or defense for which intervention is sought."  But, as we said in another case:

> the motion to intervene clearly stated the reason why the intervention was sought.  Under the circumstances, we consider the failure to comply with HFCR Rule 24(c) "a procedural blunder of no real significance."

Labayog v. Labayog, 83 Hawaiʻi 412, 419, 927 P.2d 420, 427 (App. 1996) (citing 7C Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1914 (1986)). The circuit court erred by denying Rapozo's motion to intervene. The consequence of Rapozo not becoming a party to the Partition Action is discussed in the next sections.

     **(3)**  Rapozo challenges the order granting summary judgment against other defendants when he was not a party to the case.  To have standing to appeal, a person must: (1) have been a party to the action; (2) have had standing to oppose the order or judgment in the trial court; and (3) be aggrieved by the ruling — that is, be affected or prejudiced by the appealable order or judgment.  Abaya v. Mantell, 112 Hawaiʻi 176, 181, 145 P.3d 719, 724 (2006).  "[N]onparties, who did not or could not intervene, are ordinarily denied standing to appeal."  Id. (italics and citation omitted).  Rapozo was denied intervention in the Partition Action and thus lacks standing to appeal from the order granting Andrade's motion for summary judgment.

     Significantly, Rapozo is not aggrieved by the judgment in the Partition Action because he was not a party to the case. See Waimea Falls Park, Inc. v. Brown, 6 Haw. App. 83, 87-89, 712 P.2d 1136, 1139-41 (1985).  In that case, Waimea Falls Park sued Brown to quiet title to or partition a lot in Waimea Valley.  The trial court entered a judgment declaring that Waimea Falls Park was the sole owner of the lot.  Waimea Falls Park's claim of title was based on a commissioner's deed from Antone and Lucy Joseph, husband and wife, to Waimea Falls Park's predecessor in interest, in a partition action.  Antone had been a party to the

11

partition action but Lucy was not, even though her interest appeared on record in the Bureau of Conveyances.  We stated: "We are aware of no rule of law by which one can be deprived of his title in land by a judgment rendered in a cause to which he was not a party."  Id. at 88, 712 P.2d at 1140 (cleaned up).  We held that Lucy's interest in the lot was not extinguished by the partition action.  Although we affirmed the judgment that Brown had no title to the lot, we vacated the judgment that Waimea Falls Park was the sole owner of the lot and remanded "with instructions to afford Waimea the opportunity to join Lucy's estate or her heirs in this matter and proceed with a quiet title action, if it desires to do so."  Id. at 101, 712 P.2d at 1148.

Similarly, in this case we vacate in part the judgment in the Partition Action to the extent it purports to vest sole ownership of the Parcels in Andrade and, as discussed in the next section, to the extent it decides the value of Rapozo's interest in the Parcels.  We remand the Partition Action to let Rapozo intervene and assert his interest in the Parcels.  We express no opinion about how Rapozo should be allowed to prosecute his claims, or about the value of his interest in the Parcels.  The Final Judgment in the Partition Action is affirmed in all other respects.

We also direct the circuit court to vacate in part its July 13, 2023 Escheat Order to the extent it applies to proceeds from the partition sale due to the Stapps or Rapozo, so those proceeds do not escheat on July 13, 2024.

**(4)**  Rapozo and Buckner contend that the circuit court erred by granting Andrade's motion to dismiss the Rapozo/Buckner Action.  We review de novo.  We assume the facts alleged in the complaint are true and view them in the light most favorable to the plaintiff to determine if they warrant relief under any legal theory.  Bank of Am., N.A. v. Reyes-Toledo, 143 Hawai'i 249, 256-57, 428 P.3d 761, 768-69 (2018).

Rapozo and Buckner's amended complaint was filed on March 21, 2019.  It alleged: Rapozo and Buckner owned interests

12

in the Parcels; from the 1970s to about 2016 Andrade "occupied and/or controlled a substantial part" of the Parcels; Andrade had been collecting rent and other income generated from the Parcels, including one with a cabin, without disclosing the income to others owning interests in the Parcels; Andrade made willful misrepresentations to the court in the Partition Action that were not proper in the regular conduct of the proceeding; and Andrade colluded with others to improperly quiet title to the Parcels and obtain a partition by sale in the Partition Action. Rapozo and Buckner sought (1) an accounting of, and constructive trust on, income received by Andrade from the Parcels; (2) damages for abuse of process; (3) a declaration that the judgment in the Partition Action was void; and (4) a declaration that HRS Chapter 668 was unconstitutional as applied in the Partition Action.

**(a)** Andrade moved to dismiss the amended complaint or to consolidate the case with the Partition Action.[7] The circuit court's order stated the motion was granted because "the claims [in the amended complaint] are duplicative of the [Partition Action]." Rapozo and Buckner argue that none of their claims were actually litigated in the Partition Action, and were discovered after the court had entered summary judgment for Andrade. But no judgment had been entered in the Partition Action when Rapozo and Buckner filed the Rapozo/Buckner Action, and the public auction of the Parcels had not yet taken place. To the extent Buckner (who was party to the Partition Action) discovered facts that might support reconsideration or amendment of the summary judgment order, her remedy was to move for relief from that order under HRCP Rule 60(b). Rapozo (who was not a party to the Partition Action) lacked standing to challenge or

---

[7] The motion included four exhibits: an unpublished Hawaiʻi Supreme Court decision, a document filed in the Partition Action, the Partition Action docket sheet, and the amended complaint. These documents did not convert the motion to dismiss into one for summary judgment. See Guity v. State, 153 Hawaiʻi 368, 372, 538 P.3d 780, 784 (App. 2023) ("A trial court may judicially notice the contents of court records without converting a motion to dismiss into a motion for summary judgment.").

impeach the summary judgment order or judgment.  Thus, the circuit court did not err by dismissing counts 3 and 4, which sought declarations that the judgment in the Partition Action was void and that HRS Chapter 668 was unconstitutional as applied in the Partition Action.[8]

**(b)**  Andrade argues that the claims for an accounting and constructive trust were properly dismissed because, absent ouster, a cotenant may keep profits of their own activity on a parcel.  He cites Hawaiian Com. & Sugar Co. v. Waikapu Sugar Co., 9 Haw. 75 (Haw. Rep. 1893), and Nahaolelua v. Kaaahu, 10 Haw. 662 (Haw. Rep. 1897).  In reply, Rapozo and Buckner cite Peterson v. Kaanaana, 10 Haw. 384 (Haw. Rep. 1896), and Waiwaiole v. Kulaea, 22 Haw. 651 (Haw. Terr. 1915).

In Hawaiian Commmercial & Sugar, the parties owned undivided interests in land on Maui.  HC&S fenced part of it, dug a ditch to bring in water, and grew sugar cane.  Waikapu Sugar asked for an accounting of HC&S's profits as part of the partition of the land.  The supreme court held: "to charge a tenant in common with what profits he may make while in possession of the common estate or a part thereof an ouster of his co-tenant . . . must be shown." Id. at 83.  Because no ouster was shown, the supreme court affirmed the partition without an accounting.  However, the supreme court noted it was not "a case where one tenant has rented out the land to third parties taking all the rents to his own use[,]" id. at 80, and "it would be inequitable to compel a co-tenant in possession to account for the profits realized out of his skill, labor and business enterprise when he has no right to call upon his co-tenant to contribute anything towards the production of these profits," id. at 82 (citation omitted).

In Nahaolelua, the defendants improved jointly owned land, adding a road, ditch, buildings, and fences.  The supreme court held the defendants ousted the plaintiffs and, in

---

[8]    The constitutionality issue was argued in the Partition Action, but the circuit court apparently did not decide it.

apportioning the proceeds of the partition sale, offset the plaintiffs' claim for the defendants' use and occupation of the land against the defendants' claim for the value of the improvements they made.  10 Haw. at 666.

In Peterson the supreme court held that ouster need not be shown to obtain an accounting of rents collected by a cotenant from third parties in a partition action.  10 Haw. at 386.  The supreme court noted that in Hawaiian Commmercial & Sugar it had been "careful to distinguish a claim on a co-tenant for rents from third parties from one for profits from actual use by the co-tenant."  Id.  And in Waiwaiole the supreme court held that in a partition action, "[a] cotenant may be required to account for rents collected by him from third parties for the use of the common land."  22 Haw. at 654.

These cases all stand for the proposition that the claims for an accounting and constructive trust should have been litigated in the Partition Action as compulsory counterclaims. "Under Hawaiʻi law, a counterclaim is compulsory if there is a logical relation between the original claim and the counterclaim — i.e., it arises out of the same aggregate of operative facts as the original claim."  E. Sav. Bank, FSB v. Esteban, 129 Hawaiʻi 154, 161 n.13, 296 P.3d 1062, 1069 n.13 (2013) (citing HRCP Rule 13(a)).  Buckner is estopped by acquiescence from challenging the judgment in the Partition Action.  We are remanding the Partition Action for Rapozo to intervene and assert his interest in the Parcels.  The circuit court did not err by dismissing the claims for an accounting and constructive trust in the Rapozo/Buckner Action.

**(c)**  The elements of a claim for abuse of process are: (1) an ulterior purpose; and (2) a willful act in using the process which is not proper in the regular conduct of the proceeding.  Young v. Allstate Ins. Co., 119 Hawaiʻi 403, 412, 198 P.3d 666, 675 (2008).  "Process" encompasses "the entire range of 'procedures' incident to litigation."  Id. (italics, footnote, and citation omitted).

The plaintiff in <u>Young</u> was injured in a car accident. She filed a tort lawsuit.  The defendant was insured by Allstate. He admitted falling asleep while driving.  Young had incurred over $6,000 in medical expenses and was still receiving medical treatment.  Allstate refused to offer more than $5,300 to settle. A jury awarded Young $198,971.71 in damages.  Young then sued Allstate for abuse of process (among other things).  She alleged that Allstate's "scorched-earth litigation tactics" were part of a formal program intended to increase annual profits by over $200 million by underpaying claims and denying claimants just and reasonable compensation.  119 Hawaiʻi at 414, 198 P.3d at 677. Its defense strategy, she alleged, was intended to punish her for filing her tort lawsuit and "'send a message' to claimants and the plaintiffs' bar nationwide." <u>Id.</u>  The circuit court granted Allstate's motion to dismiss.  Young appealed.

The supreme court held that Allstate's alleged litigation objective was "patently illegitimate" and Young's complaint alleged that Allstate employed process for an ulterior purpose.  <u>Young</u>, 119 Hawaiʻi at 414, 198 P.3d at 677.  However, the court stated that Allstate's alleged willful acts — making unreasonably low settlement offers and using scorched-earth litigation tactics — were part of the litigation process.  The court noted:

> The most recent edition of Professor Prosser's treatise on torts teaches that "<u>[s]ome definite act or threat</u> not authorized by the process, or aimed at an objective not legitimate in the use of the process, <u>is required</u>; and <u>there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions</u>."

<u>Id.</u> (quoting <u>W. Page Keeton et al, Prosser and Keeton on Torts</u> § 121, at 898 (5th ed. 1984)).  The supreme court held that "more is required than the issuance of the process itself." <u>Id.</u> at 415, 198 P.3d at 678 (citations omitted).  The court declined to follow case law from other jurisdictions holding that using process itself is the requisite willful act, and held: "in order to establish an abuse of process claim, the plaintiff must prove

16

a 'willful act' *distinct from the use of process per se*."  Id. at 416, 198 P.3d at 679 (emphasis added).  The supreme court affirmed the dismissal of Young's abuse-of-process claim.  Id.

We applied Young in Isobe v. Sakatani, 127 Hawai'i 368, 279 P.3d 33 (App. 2012).  The plaintiffs in Isobe alleged that the defendant attorney committed abuse of process by filing and litigating mechanic's lien and foreclosure actions against them, and by filing lis pendens in each action against their property. We held:

> Applying Young to the instant case, we conclude that the allegations in the First Amended Complaint fail to assert a willful act distinct from the use of process. Instead, the allegations contend in numerous and varied ways that [the defendant attorney] lacked justification for his use of process in the Mechanic's Lien Action and the Foreclosure Action.  Given the holding in Young, such lack-of-justification allegations do not suffice to support an abuse of process claim.

Id. at 386, 279 P.3d at 51.

We recently applied Young in Domingo v. James B. Nutter & Co., 153 Hawai'i 584, 543 P.3d 1 (App. 2023).  The plaintiffs in that case argued that the defendant attorneys committed abuse of process by filing a foreclosure complaint knowing their client had no right to foreclose.  We held that the plaintiffs alleged an ulterior purpose, but "did not allege the type of improper act upon which a claim of abuse of process may be founded."  Id. at 620, 543 P.3d at 37.  We affirmed the dismissal of the claim for abuse of process.

Rapozo has no claim for abuse of process because he was never a party to the action in which he claims process was abused.  Regardless, he and Buckner argue these paragraphs of their complaint support their claim for abuse of process:

> 113.  ANDRADE had an ulterior purpose in **telling the Court** that the Defendants in [the Partition Action] all shared an identical interest, when he knew that Defendant North Shore Kalo had a very different interest, namely ensuring as Mr. Zuckerberg stated, that ANDRADE "will continue his quiet title action and upon completion *his family* will have ownership of those kuleana." (emphasis added).

17

. . . .

> 115.  ANDRADE's ***misrepresentation to the Court*** was a willful
> act in the use of the process and was not proper in
> the regular conduct of the proceeding.

(Emphasis added.)  These paragraphs do not allege willful acts distinct from the litigation of the Partition Action.  And even if North Shore Kalo's interests were aligned with those of Andrade, at least some of the other defendants — Guerrero, Ferreira-Ige, and the Evanses, according to their appeals — shared interests with Buckner, as shown by their joint appeal from the Partition Action.

> 28.  On information and belief, ANDRADE has rented out one
> or more of the *kuleana* parcels for long periods of
> time, at the expense of the extended Rapozo family and
> essentially ANDRADE's other co-tenants in common
> (including members of the extended Rapozo family until
> such time as they transferred their interest to North
> Shore Kalo and/or Andrade).
>
> . . . .
>
> 30.  On information and belief, Defendant ANDRADE has also
> received legal services that were paid for by North
> Shore Kalo LLC or other Zuckerberg entities, and the
> value of said legal services are part of income
> associated with the *kuleana* lands that should be
> disclosed to and shared with the Rapozo family and
> ANDRADE's other co-tenants (including for members of
> the extended Rapozo family for such time as they held
> such fractional co tenant [sic] interests until they
> voluntarily transferred them.
>
> . . . .
>
> 32.  ANDRADE failed to disclose and share the rental income
> and other income or value he derived from the four (4)
> *kuleana* parcels to the extended Rapozo family or to
> his other co-tenants.

These paragraphs, alleged to support the claim for an accounting and constructive trust, do not allege an ulterior purpose for Andrade litigating the Partition Action.  Nor do they allege willful acts distinct from the litigation of the Partition Action because (as discussed above) Buckner could have obtained relief by requiring that Andrade account for the rental or other income in the Partition Action.

49.     Upon information and belief, ANDRADE obtained ownership of over 10% of the *kuleana* parcels through misrepresentation, fraud and/or duress.

This paragraph does not allege an ulterior purpose by Andrade against Buckner because it does not allege that Andrade obtained *Buckner's* interest in the Parcels through misrepresentation, fraud, or duress.  Buckner still owned her interest in the Parcels when she filed the complaint in the Rapozo/Buckner Action two days before the public auction.

The circuit court did not err by dismissing the abuse of process claim.

## CONCLUSION

For the reasons discussed above, we (1) affirm the Final Judgment in the Partition Action as to Buckner, Guerrero, Ferreira-Ige, the Evanses, and the Stapps; (2) vacate in part the Final Judgment in the Partition Action to the extent it vests sole ownership of the Parcels in Andrade and adjudges the value of Rapozo's interest in the Parcels, and remand for further proceedings consistent with this memorandum opinion; (3) direct the circuit court to vacate in part its July 13, 2023 Escheat Order in the Partition Action to the extent it applies to proceeds from the partition sale due to the Stapps or Rapozo; and (4) affirm the Final Judgment in the Rapozo/Buckner Action.

DATED: Honolulu, Hawaiʻi, June 4, 2024.

On the briefs:

Daniel G. Hempey,
Craig A. De Costa,
Michelle Premeaux,
for Appellants Shannon
Buckner, Wayne J. Rapozo,
Merwin Andrew Stapp, Jr.,
Sharon Margaret Stapp,
Jennie Guerrero, Terri
Ferreira-Ige, Eugene Evans, Jr.,
Matthew Evans and Shamus Evans.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge

Harvey L. Cohen,
for Ivy H. Andrade, Personal
Representative of the Estate of
Carlos Lawrence Andrade, Deceased,
Plaintiff-Appellee/Cross-Appellee
and Defendant-Appellee.